622 A.2d 858

ELSA DENNERY, PETITIONER–RESPONDENT, v. BOARD OF EDUCATION OF THE PASSAIC COUNTY REGIONAL HIGH SCHOOL DISTRICT # 1, PASSAIC COUNTY, RESPONDENT–APPELLANT.

Argued October 14, 1992—Decided April 8, 1993.

628

Richard H. Bauch argued the cause for appellant (DeMaria, Ellis, Hunt, Salsberg & Friedman, attorneys).

Marlene Zuberman, Deputy Attorney General, argued the cause for appellant New Jersey State Board of Education (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Mary C. Jacobson, Deputy Attorney General, of counsel).

Robert A. Fagella argued the cause for respondent (Zazzali, Zazzali, Fagella & Nowak, attorneys).

Michael F. Kaelber argued the cause for amicus curiae New Jersey School Boards Association (Sheila Dow Ford, Director, attorney).

Kenneth A. Sandler submitted a brief on behalf of amicus curiae New Jersey Education Association (Selikoff & Cohen, attorneys; Steven R. Cohen, of counsel; Mr. Sandler and Mr. Cohen, on the brief).

The opinion of the Court was delivered by

HANDLER, Justice.

This case requires the Court once again to examine the complex laws governing teacher tenure. We are asked to review the standards that require educators to possess a professional certificate corresponding to a major area of educational responsibilities—denominated as instructional, educational services, and administrative—and to serve in a specific position included under a particular certificate for a probationary period to secure tenure protection under that certificate. The effect of those tenure requirements is that the requisite service in a specific position that confers tenure under one certificate does not automatically entitle an educator to tenure in a position under another certificate, even though the two positions may have some similar or overlapping functions.

The intricacy of the tenure scheme is illustrated by this case. Petitioner had obtained tenure as a high school guidance counselor. That position was included under the educational-services certificate. As a result of a departmental reorganization, the guidance-counselor position was eliminated and its functions incorporated into a newly-created position, that of class supervisor. The class supervisor's position was included under two certificates, namely, educational services and administrative. Petitioner thereafter became qualified to hold the administrative certificate. However, because she had not previously served in any position included under that certificate, she was denied appointment as a class supervisor, despite her tenured service as a guidance counselor under the educational-services certificate.

The question to be answered is whether the tenure requirements were validly applied under the circumstances of this case to deny a tenured educator an appointment to a new position under a different certificate for which she possessed the requisite credentials but under which she had previously accrued no actual work experience.

## I

Petitioner, Elsa Dennery, was a guidance counselor employed by the Board of Education of Passaic Valley Regional High School, District One (the "Board" or "District"). She had served in that position for twenty-seven years when in 1989 the position was abolished. Petitioner had attained tenure in the position of guidance counselor under a certificate in the area of "educational services." Dennery also held a second certificate in the "instructional" area, but the guidance counselor position was not a position under that certificate.

In 1985, Dr. Louis Centolanza, Superintendent of the Board, sent out a survey to parents, guardians, and staff. The results were overwhelmingly critical of the guidance department. Based on the survey, the Superintendent recommended that the

Board create a new Director of Pupil Services position. The function of that position would be to oversee the guidance department during the 1985–86 school year and to conduct a performance evaluation of the guidance staff.

In the spring of 1986, Dr. Centolanza issued a report. He recommended a wholesale restructuring of the guidance department. The restructuring would include the phasing out and elimination of guidance counselors and the creation of a new position, class supervisor. Each class supervisor would be responsible for advising and monitoring an entire class of pupils throughout their four years at the high school. Dr. Centolanza planned to hire one person each year to fill the class-supervisor positions. During the transition, the guidance counselors were to remain in their positions.

The position of class supervisor required two certificates, an administrative certificate and an educational-services certificate. The additional credential of an administrative certificate was required because the new position entailed more supervisory functions within the school than previously required of a guidance counselor. In addition to monitoring student performance, class supervisors would evaluate teachers and also administer in-school discipline.

In June 1986, Dr. Centolanza posted a notice for the position of class supervisor for the class of 1990. That position was filled by a former department head and industrial-arts teacher. The second position, supervisor of the class of 1991, was also posted and was filled by a former guidance counselor in the District. Both of the newly-appointed class supervisors possessed the two requisite certificates. At the time the vacancies were announced, Dennery had not yet obtained the required administrative certificate, and hence did not apply for either of those positions.

In May 1988, the District advertised for a supervisor for the class of 1992. Dennery applied for that position, although she had not yet obtained her administrative certificate when the

vacancy was announced. However, she obtained that credential in July 1988. The position was awarded to another candidate, who was otherwise qualified by virtue of the necessary certificates, but who had not previously served on the teaching staff in the District.

The Board posted its final opening for a class supervisor for the class of 1993 in the spring of 1989. Dennery also applied for that position. Another candidate was selected to fill the vacancy. Dennery's position as a guidance counselor was subsequently abolished and her employment terminated in June 1989.

Dennery appealed her termination and the denial of her appointment to the position of class supervisor. The Office of Administrative Law heard Dennery's appeal in January 1990. The Administrative Law Judge ("ALJ") determined that Dennery's tenure rights were not transferable to the newly-created position and, further, that the positions were not similar. The Commissioner of Education (the "Commissioner") and the State Board of Education (the "State Board") affirmed the ALJ's decision.

The Appellate Division reversed and ordered petitioner's reinstatement as a class supervisor. We granted the petition for certification filed on behalf of the District and State Board, 127 *N.J.* 561, 606 *A.*2d 372 (1992), and now reverse.

## II

In this state, tenure of educational personnel is authorized by the Tenure Act, *N.J.S.A.* 18A:28–1 to –18. A person who is employed in the public schools must normally "hold[] ... a valid certificate to teach, administer, direct or supervise the teaching, instruction or educational guidance of ... pupils in such public schools." *N.J.S.A.* 18A:26–2. A teaching-staff member must also possess the appropriate credentials or "certification" to achieve tenured status. "No teaching staff member shall acquire tenure in any position in the public schools in

any school district or under any board of education, who is not the holder of an appropriate certificate for the position, issued by the state board of examiners." *N.J.S.A.* 18A:28–4.

In addition to certification, an educator must serve a probationary period in a given position under a designated certificate to achieve tenure. *N.J.S.A.* 18A:28–5, prescribing such a probationary period, provides that a teaching-staff member shall "be under tenure during good behavior" if he or she is employed in a school district for (a) three consecutive calendar years, or (b) three consecutive academic years (if the teacher is employed at the beginning of the next academic year), or (c) the equivalent of more than three academic years within any four academic years.

The Legislature has delegated the responsibility for the regulation and administration of public education tenure to the State Board. The State Board, in turn, has established comprehensive and detailed regulations governing tenure. Those regulations cover the certification of educational personnel. *N.J.A.C.* 6:11. The state board of examiners is authorized to "grant appropriate certificates to teach or to administer, direct or supervise, the teaching, instruction, or educational guidance in public schools." *N.J.A.C.* 6:11–2.2. The certificates authorized by the State Board correspond to the major areas in which a teaching-staff member may serve within a public school. There are three basic types of certificates that an educator may acquire: instructional, administrative, and educational services. *N.J.A.C.* 6:11–2.3.

In addition to the three types of certificates, the State Board has also designated "special endorsements" under each type of certificate. *Ibid.* Those endorsements coincide with the educational subjects or positions that share common attributes and thus are grouped under a particular certificate. For example, under the instructional certificate, special endorsements relate to positions or subjects such as elementary education, English, foreign languages, and social studies. *N.J.A.C.* 6:11–6.2. Ac-

tual employment in a specific position requires that the person hold the endorsement for that position. Thus, an art teacher might be required to hold an instructional certificate with an endorsement in art. A person may also possess multiple endorsements under a certificate, qualifying that person to be employed in the positions covered by the respective endorsements. *See, e.g., N.J.A.C.* 6:11–6.1, 6.2.

To acquire a particular certificate and endorsement, an educator is also required to fulfill certain academic requirements. *N.J.A.C.* 6:11–5.1 to 5.2. Those most often include the completion of coursework or the acquisition of a relevant higher degree. On the satisfactory completion of all requirements, the Division of Teacher Preparation and Certification will certify the educator. *N.J.A.C.* 6:11–3.19.

An educator who has attained tenure by virtue of the requisite service in a specific position will have tenure with respect to all positions under the particular certificate. *Ellicott v. Board of Educ.,* 251 *N.J.Super.* 342, 349, 598 *A.*2d 237 (App. Div.1991). Tenure under any one endorsement entitles an educator to tenure under all endorsements obtained under his or her certificate. *Id.* at 350, 598 *A.*2d 237; *Bednar v. Westwood Bd. of Ed.,* 221 *N.J.Super.* 239, 534 *A.*2d 93 (App.Div. 1987) (holding that tenured teacher with instructional certificate and endorsement in art also entitled to tenured post requiring secondary art endorsement), *certif. denied,* 110 *N.J.* 512, 541 *A.*2d 1371 (1988); *Capodilupo v. West Orange Township Bd. of Ed.,* 218 *N.J.Super.* 510, 528 *A.*2d 73 (App.Div.) (holding that teacher teacher with both elementary and secondary physical education endorsements was tenured under both endorsements), *certif. denied,* 109 *N.J.* 514, 537 *A.*2d 1300 (1987); *Grosso v. Board of Educ.,* 1990 *S.L.D.* 1750.

■ Thus, an educator with tenure in any endorsement that he or she possesses can, in effect, extend or transfer that tenure to other endorsements that are subsumed under the same certificate. In this case, however, petitioner seeks to

"transfer" her tenure under one certificate to a position under a different certificate, a certificate that she has acquired but under which she has not accrued any relevant work experience.

### III

The Appellate Division found that Dennery, by virtue of her tenured status under her educational-services certificate, qualified for tenure under her administrative services certificate. The court referred to those previous decisions in which tenure protection has been extended to a teacher's multiple endorsements under a single certificate if that teacher had obtained tenure under any one of those endorsements. See, *e.g.*, *Bednar, supra,* 221 *N.J.Super.* 239, 534 *A.*2d 93; *Capodilupo, supra,* 218 *N.J.Super.* 510, 528 *A.*2d 73; *Grosso, supra,* 1990 *S.L.D.* 1750. Based on those cases, the Appellate Division determined that the transfer of tenure rights between *certificates* was analogous to the extension of tenure protection between *endorsements.* In addition, according to the Appellate Division, petitioner did not have to serve in a position under her administrative certificate in order to obtain tenure protection under that certificate, because she had already achieved tenure under her educational-services certificate. The Appellate Division, in effect, thus dispensed with the requirement that there be actual service in a position under a certificate to gain tenure under that certificate.

The Appellate Division believed that the distinctions arising from the current regulatory scheme governing certification and tenure are not "meaningful." 251 *N.J.Super.* at 148, 597 *A.*2d 559. It "perceive[d] no substantive difference arising from the fact that in the case before us [plaintiff's] credentials [were] set forth in two separate certificates rather than a single certificate with multiple endorsements." *Ibid.* The District and State Board argue that the Appellate Division opinion has abrogated the State Board's power to establish separate and distinct categories of certification and related endorsements that serve

to ensure that educators possess the appropriate training for the diverse tasks involved in public school education.

Previously, in *Ellicott*, the Appellate Division itself noted that the provision of *N.J.S.A.* 18A:28-5 "define[d] with *specificity* the conditions under which teaching staff members are entitled to tenure." 251 *N.J.Super.* at 342, 598 *A.*2d 237 (emphasis added). The court stressed that "the scope of [a teacher's] tenured position is initially limited by the 'certificate' the teaching staff member must hold to satisfy the prerequisite of qualifications for his or her employment." *Id.* at 348, 598 *A.*2d 237.

The Appellate Division there also discussed the State Board's rationale for grouping various endorsements together under an educational-services certificate. As the court noted, "the State Board, applying its expertise, catalogued the numerous endorsements ... under a single umbrella of the educational services certificate for sound administrative and educational reasons." *Ibid.* The court actually examined the various endorsements clustered together under the educational-services certificate and found that they possessed similar characteristics. *Id.* at 350, 598 *A.*2d 237.

Although the Appellate Division has here concluded that the distinction between multiple endorsements under one certificate and multiple certificates is not "meaningful" for purposes of tenure, that judicial assessment cannot in this context displace the contrary administrative view. As stressed by the District and State Boards, a comparison of the endorsements and requirements under each of the certificates at issue in this case indicates substantial differences between the two certificates.

The endorsements grouped within the educational-services certificate are related to support services within a school. For instance, endorsements for the positions of school social worker, speech-language pathologist, speech-language specialist, school psychologist, and physical therapist are all included under the educational-services certificate. *See, e.g., N.J.A.C.*

6:11–11.3 to –11.20. The endorsements listed under the administrative certificate are quite different. Those endorsements relate to the administration or supervision of a school and its staff. Such endorsements include positions such as principal, superintendent, and school administrator.

The District and the State Boards point out that an educator's possession of two distinct certificates is qualitatively different from the possession of a single certificate with multiple endorsements. Endorsements under a single certificate represent a related combination of qualifications, reflecting the common or related skills that are required for the satisfactory performance of educational responsibilities under that certificate. Certificates, by contrast, represent distinct and separate areas spanning the entire field of public education, and the different certificates relate to discrete and distinctive categories of functions, duties, and responsibilities of educators.

The Legislature clearly and pointedly has vested responsibility in the State Board to fashion standards and promulgate guidelines concerning the qualification and certification of public educators within the State. *Ellicott, supra,* 251 *N.J.Super.* at 350, 598 *A.*2d 237. The Legislature intended that the State Board "promulgate specifications concerning the categories of 'certification'" and that courts not intervene "unless the State Board's decision is palpably arbitrary." *Id.* at 350, 598 *A.*2d 237. Agency regulations are accorded substantial deference based on the recognition that "certain subjects are within the peculiar competence of the agency." *In re Amendment of N.J.A.C. 8:31B–3.31,* 119 *N.J.* 531, 543, 575 *A.*2d 481 (1990). The delegation of regulatory and administrative responsibility over tenure to the State Board is based on the complexity and specialized nature of the subject of teacher tenure. *Ellicott, supra,* 251 *N.J.Super.* at 350, 598 *A.*2d 237. Our courts have long recognized the importance of allowing the State Board to devise requirements governing both students and teaching staff. *See, e.g., Shelton College v. State Bd. Of Educ.,* 48 *N.J.* 501, 517–18, 226 *A.*2d 612 (1967).

■ Petitioner makes an additional argument based on the circumstance that the position of class supervisor created by the District is the only position in the entire field of public education that requires two certificates. We acknowledge that that circumstance is most unusual and, indeed, possibly unique. We are unable to conclude, however, that the requirement of two certificates to qualify for a single education position is anomalous, arbitrary, or irrational. Nor is it unlawful or invalid.

The dual-certification requirement is not expressly authorized by any regulation. *See, e.g., N.J.A.C.* 6:11–3.1. Neither, however, is that requirement prohibited by any regulation. The Commissioner and State Board approved the establishment of this position. They were satisfied in this case that the dual-certification requirement for the position of class supervisor as established by the District was sound. Consequently, the courts need not and should not second guess the educational expertise and wisdom of the administrators in approving the creation of the new position and prescribing its qualifications.

Another effect of the Appellate Division holding in this case is to obviate as a tenure requirement actual service in a position included under a certificate. The District and State Boards contend that the elimination of requisite service violates the statutory and regulatory scheme governing tenure.

Pursuant to the current scheme, tenure accrues to a teaching staff member under a certificate only if he or she has also served in a position under that same certificate for a requisite period of time. In *Spiewak v. Board of Education of Rutherford,* 90 *N.J.* 63, 447 *A.*2d 140 (1982), we concluded that teachers who provided remedial instruction to educationally handicapped children qualified for tenure when they met all statutory qualifications governing tenure. We stated that the language of the statute concerning tenure requirements, *N.J.S.A.* 18A:28–5, was "clear and unambiguous." *Id.* at 74, 447 *A.*2d 140. We further concluded that by the *express* terms of the

statute, an employee of a board of education would be entitled to tenure if "(1) she works in a position for which a teaching certificate is required; (2) she holds the appropriate certificate; and (3) she has served the requisite period of time." *Ibid.* The language of *Spiewak* points to a definitive requirement that a teacher actually perform duties under the relevant certificate in order to obtain tenure under that certificate.

In sum, the Commissioner and State Board have approved the requirement of dual certification for a position with specifications relating to each of those certificates and has implemented the legislative and administrative directive that service in a position under a certificate is required as a basis for tenure under that certificate. Petitioner has not demonstrated that those regulatory determinations were palpably unreasonable, arbitrary, or capricious.

## IV

Petitioner also contends that regardless of certification requirements, the duties of a class supervisor are substantially similar to her duties as a guidance counselor. Thus, the tenure requirements as applied in her case have deprived her of the protection to which she was entitled by virtue of her long-tenured service as a guidance counselor. Because the positions are so similar, petitioner argues, the District's use of the additional certificate requirement amounts to a subterfuge that cannot be a valid basis to deny her tenure rights and deprive her of an appointment to a similar position.

When the duties of the position in which a teaching-staff member has acquired tenure are substantially identical to those of the position that the person seeks, a local school board may not sidestep an educator's tenure rights by simply renaming the position or tacking on additional meaningless requirements. The local board must extend the teaching-staff member's tenure rights to the newly-created position. *See, e.g., Viemeister v. Board of Educ.*, 5 *N.J.Super.* 215, 218, 68 *A.*2d 768 (App.Div.

1949) (holding that tenured principal should be reinstated because his position had not in fact been abolished when local school board created the position of "teaching" principal); *Vogel v. Board of Educ.*, (State Bd. of Educ. June 5, 1985), slip op. at 5–6. (explaining that a "[b]oard's decision to abolish a position is not sacrosanct and will be disturbed if it is found that the duties of the abolished position essentially have been transferred to another position so as to defeat the rights of the tenured employee to the abolished position"); *Luppino v. Board of Educ.*, 1980 *S.L.D.* 1028, 1035–36 (ruling that duties of administrator of home instruction and principal of home instruction "were substantially the same" and change of title "did not involve the meaningful addition of extra duties").

A mere overlap in duties, however, does not mean that two positions are equivalent for tenure purposes. If a newly-created position is similar to a tenure holder's abolished position but also requires additional duties or different responsibilities, then the newly-created position is not considered to be substantially similar to the former position. *Santasiero v. Parsippany–Troy Hills Bd. of Educ.*, 1984 *S.L.D.* 854, 879; *see also Sandri v. Board of Educ.*, 1986 *S.L.D.* 1501 (ruling that duties of abolished position of supervisor of guidance/shop were similar but of greater nature and scope than newly-created position of director of special needs and student services); *Rufalo v. Board of Educ.*, 1986 *S.L.D.* 1699 (ruling that despite overlap of duties between post of vice-principal and newly-created supervisor position, positions were "substantially different").

Despite petitioner's belief that the new position of class supervisor is only a thinly-disguised effort to repackage the job of guidance counselor by creating a new job title and requiring minor additional supervisory duties, the record indicates that the Commissioner and State Board could reasonably conclude that the positions were in fact different.

Based on the testimony of various witnesses at Ms. Dennery's administrative hearing, the Commissioner and State

Board concluded that the two positions involved were not substantially similar to one another. Dr. Centolanza testified concerning the scope and nature of the class-supervisor position. According to his testimony, the supervisor performed several new functions not required of a guidance counselor. Those duties included the formal evaluation of teachers, building-wide supervision one day per week, supervision of in-school discipline, and the enforcement of the school's tardiness policy. Dr. Centolanza estimated that up to forty percent of a class supervisor's day was occupied by those tasks.

Petitioner herself testified that she had performed all of the duties performed by class supervisors with the exception of evaluating teachers. Thomas Kean, a former guidance counselor and new class supervisor, also testified on behalf of Dennery, as did two other teachers. They all conceded that class supervisors performed certain supplemental *supervisory* functions.

The ALJ, the Commissioner, and the State Board found that the teacher evaluation function performed by the class supervisors was the critical distinction between the two posts. Dennery's guidance work involved only student evaluations rather than teacher evaluations. Because teacher evaluation required supervisory skills, the Commissioner and State Board reasonably concluded that Dennery's service as a guidance counselor was distinctly different from work performed by the new supervisors.

Ordinarily, we will not reverse the determination of an administrative agency unless it is arbitrary, capricious, or unreasonable or is not supported by substantial credible evidence in the record as a whole. *Henry v. Rahway State Prison*, 81 *N.J.* 571, 580, 410 *A.*2d 686 (1980) (citing *Campbell v. Department of Civil Serv.*, 39 *N.J.* 556, 562, 189 *A.*2d 712 (1963)). We adhere to that standard to resolve disputes arising under school laws. *Dore v. Board of Educ.*, 185 *N.J.Super.* 447, 452, 449 *A.*2d 547 (App.Div.1982). The record thus reasonably supports

the determination that the newly-created position of class supervisor required the performance of additional duties and tasks and that the position was not so substantially similar to Dennery's previous position as a guidance counselor.

We also conclude that the State Board properly determined that the District had a legitimate basis for restructuring the guidance department. According to the testimony of Dr. Centolanza, he had received continued complaints and criticism concerning the performance of the guidance department. Based on those complaints, he endeavored to restructure the guidance department. Dennery's position was abolished as part of an overall reorganization based on a legitimate educational policy rather than as part of a direct attempt to remove her from the District.

In the same vein, we are unable to ascribe bad faith to the District in the elimination of Dennery's position. We have reviewed the entire record and have found no evidence of improper motives or bad faith on the part of the District in revamping the guidance counselor services and eliminating the position of guidance counselor. That Dennery had a good employment record with the District and had never received any negative evaluations from her supervisors is evident. However, despite petitioner's contentions that she had been terminated for improper reasons or ill will on the part of the Superintendent, we find no support for that proposition from the record.

## V

It is unfortunate that an educator such as Ms. Dennery, highly qualified as a guidance counselor, additionally qualified under all three major educational certificates, and also possessed of a long record of service within a public school system, should have lost her job as a consequence of a reorganization within the school district. The denial of petitioner's appointment to a newly-created position perhaps is attributable in part

to the perceived deficiencies in the current statutory and regulatory scheme governing tenure. However, the reasonableness of the tenure system and its application in individual cases reposes in the sound and expert discretion of the educators statutorily authorized to regulate public education. Courts will be vigilant to assure the proper application of the school laws and to forestall capricious or arbitrary administrative action. However, the courts cannot supplant educators; they are not at liberty to interfere with regulatory and administrative judgments of the professionals in the field of public education unless those judgments are palpably arbitrary or depart from governing law.

The judgment of the Appellate Division is reversed.

*For reversal*—Chief Justice WILENTZ and Justices CLIFFORD, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*For affirmance*—None.