642 A.2d 993

DOROTHY KLETZKIN, PETITIONER–RESPONDENT, v. BOARD OF EDUCATION OF THE BOROUGH OF SPOTSWOOD, MIDDLESEX COUNTY, RESPONDENT–APPELLANT.

Argued November 8, 1993—Decided June 29, 1994.

*Philip H. Shore* argued the cause for appellant (*Shore & Zahn*, attorneys; *Mr. Shore* and *John B. Wolf,* on the briefs).

*Stephen B. Hunter* argued the cause for respondent (*Klausner, Hunter, Cige & Seid,* attorneys).

*Arlene Goldfus Lutz*, Deputy Attorney General, argued the cause for respondent State Board of Education (*Fred DeVesa,* Acting Attorney General of New Jersey, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel).

*Donna M. Kaye*, Associate Counsel, argued the cause for *amicus curiae,* New Jersey School Boards Association (*Sheila Dow Ford,* Director, attorney).

The opinion of the Court was delivered by

POLLOCK, J.

The issue is whether respondent, Dorothy Kletzkin, a school psychologist, acquired tenure while on leave because of a work-related injury. The Commissioner of Education (the Commissioner), the New Jersey State Board of Education (the Board), and the Appellate Division, 261 *N.J.Super.* 549, 619 *A.*2d 621 (1993), all read the tenure statute, *N.J.S.A.* 18A:28–5, to require a finding that Kletzkin had acquired tenure. We granted the petition for certification of the Spotswood Board of Education (Spotswood), 133 *N.J.* 443, 627 *A.*2d 1148 (1993), and now affirm.

–I–

Kletzkin began employment with Spotswood as a learning-disabilities teacher consultant on January 13, 1986. Spotswood reclassified her as a school psychologist on October 22, 1986. She served in that capacity for the remainder of the 1986–87 school year and throughout the 1987–88 year. Spotswood rehired Kletzkin for the 1988–89 year. She continued to work as a school psychologist until November 17, 1988, when a work-related injury forced her to take an involuntary leave of absence. Pursuant to *N.J.S.A.* 18A:30–2.1, she continued to receive her full salary. On April 11, 1989, before Kletzkin's return to service, Spotswood terminated her employment.

The applicable statute, *N.J.S.A.* 18A:28–5(c), provides that teaching-staff members, which include school psychologists, receive tenure "after employment" for the equivalent of more than three academic years within a period of any four academic years. An academic year runs for the ten months between September 1 and June 30 of the school year. *See N.J.S.A.* 18A:1–1 (defining academic year as "the period between the time school opens in any school district or any board of education after the general summer vacation until the next succeeding summer vacation"). Thus, to obtain tenure, Kletzkin would have had to be "employed" for thirty months and one day over four academic years. At the time of her injury, she had served for slightly more than twenty-eight

months. The parties disagree whether she obtained tenure when the thirtieth month passed in January 1989 while she was disabled.

The Commissioner found in Kletzkin's favor, using a case-by-case subjective approach. Although the Board affirmed the finding that Kletzkin was entitled to tenure, it reasoned that Kletzkin's claim turned "solely on analysis of whether she satisfied the specific requirements of *N.J.S.A.* 18A:28–5." The Appellate Division affirmed, "substantially for the reasons set forth by the Board in its decision," 261 *N.J.Super.* at 552, 619 *A.*2d 621.

–II–

Tenure is a statutory right that depends on a teacher's satisfying specific statutory conditions. *Spiewak v. Board of Educ.*, 90 *N.J.* 63, 72, 447 *A.*2d 140 (1982); *Zimmerman v. Board of Educ.*, 38 *N.J.* 65, 72, 183 *A.*2d 25 (1962), *cert. denied,* 371 *U.S.* 956, 83 *S.Ct.* 508, 9 *L.Ed.*2d 502 (1963). Because of its remedial purpose, we construe the Act liberally. *Spiewak, supra,* 90 *N.J.* at 74, 447 *A.*2d 140. "Moreover, as the agency ultimately charged with implementation of the school laws, the Board's statutory interpretation is entitled to considerable weight, where not inconsistent with the statute and in harmony with the statutory purpose." *Kletzkin, supra,* 261 *N.J.Super.* at 553, 619 *A.*2d 621 (citing *Bassett v. Board of Educ.*, 223 *N.J.Super.* 136, 142–43, 538 *A.*2d 395 (App.Div.1988)). Although remaining vigilant to the "proper application of the school laws ...," *Dennery v. Board of Educ.*, 131 *N.J.* 626, 643, 622 *A.*2d 858 (1993), we also recognize that we should not interfere with the Board's decisions unless those decisions are "palpably arbitrary." *Ibid.*

The dispositive statute provides:

The services of all teaching staff members ... shall be under tenure during good behavior and efficiency and they shall not be dismissed or reduced in compensation except for inefficiency, incapacity, or conduct unbecoming such a teaching staff member or other just cause ... after *employment* ... for

\*    \*    \*    \*    \*    \*    \*    \*

(c) The equivalent of more than three academic years within a period of any four consecutive academic years.

[*N.J.S.A.* 18A:28–5 (emphasis added).]

■ Kletzkin maintains that "employment" includes periods of sick leave, that she obtained tenure while on such leave, and that Spotswood improperly terminated her. We agree. Our analysis begins with the plain language of the statute, which contemplates an ordinary employment relationship. "Since the wording of *N.J.S.A.* 18A:28–5 is clear and unambiguous, we will apply it as written in the absence of any evidence of a contrary legislative intent." *Spiewak, supra,* 90 *N.J.* at 74, 447 *A.*2d 140.

■ A teacher's employment begins with the actual performance of service, not the date of hiring. *See Zimmerman, supra,* 38 *N.J.* at 73–74, 183 *A.*2d 25; *Carroll v. State Board of Educ.,* 8 *N.J.Misc.* 859, 862, 152 *A.* 339 (Sup.Ct.1930). Further, "continuous employment" exists notwithstanding the "mere occasional absence of a teacher by reason of illness or excuse." *Board of Educ. v. Wall,* 119 *N.J.L.* 308, 309–10, 196 *A.* 663 (Sup.Ct.1938). Spotswood hired Kletzkin for the school year spanning September 1, 1988, through June 30, 1989, and she started work under that employment contract. A teacher who performs services under a contract for the year is employed for the purposes of the statute, *see Zimmerman, supra,* 38 *N.J.* at 74, 183 *A.*2d 25, even if he or she takes an involuntary leave. Accordingly, Spotswood maintained the employment relationship with Kletzkin until it terminated her on April 11, 1989, approximately three months after she had become tenured. In sum, the termination occurred after Kletzkin became tenured in January 1989.

Another statute, *N.J.S.A.* 18A:30–2.1, confirms that the Legislature intended that a teacher's employment would continue during a period of involuntary sick leave. That statute provides:

Whenever any employee, entitled to sick leave under this chapter, is absent from his post of duty as a result of a personal injury caused by an accident arising out of and in the course of his employment, his employer shall pay to such employee the full salary or wages for the period of such absence for up to one calendar year

without having such absence charged to the annual sick leave or the accumulated sick leave provided in sections 18A:30–2 and 18A:30–3.

[*Ibid.*]

By referring to a teacher on sick leave as an "employee," and by requiring a school board to "pay to such employee the full salary or wages for the period of such absence," the statute recognizes that teachers are employed while on sick leave.

In other contexts, we have also recognized that an employee on a leave of absence remains an employee. *See Ward v. Keenan,* 3 *N.J.* 298, 310, 311, 70 *A*.2d 77 (1949) (holding police officer on leave of absence "does not lose his tenure during good behavior"; rather, "a leave of absence, instead of constituting a complete severance of responsibility, is analogous to the off duty period enjoyed daily by every police officer, except that it extends for a longer period"); *see also Blinn v. Board of Trustees,* 173 *N.J.Super.* 277, 278, 414 *A*.2d 263 (App.Div.1980) (stating in pension case, "phrase 'leave of absence' itself 'connotes a continuity of the employment status' ") (citations omitted). These analogous cases substantiate our conclusion that Kletzkin continued her period of employment during her leave of absence.

We reject Spotswood's argument, embraced by the dissent, that the statute requires that a teacher render a full thirty months of active service during the probationary period. In rejecting that argument, we recognize the importance of a probationary period as a means of assessing a teacher's performance. *See Zimmerman, supra,* 38 *N.J.* at 73, 183 *A*.2d 25 (stating that policy of tenure legislation "demands that permanent appointments be made only if the teachers are found suitable for the positions after a qualifying trial period"); *see also Cammarata v. Essex County Park Comm'n,* 26 *N.J.* 404, 412, 140 *A*.2d 397 (1958) (emphasizing that crucial test of park police officer's fitness is "how he fares on the job from day to day"). Kletzkin, however, was no stranger to the Board. It had ample opportunity to assess her over twenty-eight months during four school years. Nothing indicates that the Board had any reason to deny her tenure before she was injured on the job. Under the unusual circumstances of this case, we

conclude that Kletzkin's brief period of sick leave did not deprive the Board of its opportunity to evaluate her before she acquired tenure. In another case, a more extended leave of absence could lead to a different result. As the Board recognized, the happenstance that Kletzkin's leave occurred at the end of her probationary period does not justify excluding the time that she was on leave from her probationary period.

The judgment of the Appellate Division is affirmed.

STEIN, J., dissenting.

This case turns on the meaning of "employment" in a tenure statute, *N.J.S.A.* 18A:28–5. That enactment provides that a teaching-staff member "serving in any school district or under any board of education" acquires tenure

*after employment* in such district or by such board for:

(a) Three consecutive calendar years, or any shorter period which may be fixed by the employing board for such purpose; or

(b) Three consecutive academic years, together with employment at the beginning of the next succeeding academic year; or

(c) The equivalent of more than three academic years within a period of any four consecutive academic years. (Emphasis added.)

The Court determines today that "employment" as used in the tenure statute means contractual employment, and that it therefore includes a period during which a teacher is absent on an extended paid disability leave. Although that result may seem appropriate in the case of respondent, Dorothy Kletzkin, who served subject to the evaluation of the Spotswood school board for twenty-eight months and was injured on the job just two months before she would have completed the full probationary period, the Court's conclusion may allow insufficiently-evaluated teachers to acquire tenure. Because tenured teachers cannot be discharged except for substantial cause, the probationary tenure period is critically important in determining a teacher's competence in classroom instruction, and a decision that effectively shortens that probationary period disserves the interests of school children and potentially undermines the purpose of the tenure statute. My

view is that "employment" in the tenure context contemplates a period of actual service.

I

Kletzkin, hired in the middle of the academic year, began employment with the Spotswood school district on January 13, 1986, as a learning-disabilities teacher consultant (LDTC). She served for the remainder of that academic year until June 30, 1986. The Spotswood Borough Board of Education (Spotswood) rehired Kletzkin for the 1986–87 school year, and she served from September 1, 1986, through June 30, 1987, first as an LDTC and then as a school psychologist. Pursuant to a new contract, Kletzkin worked the following academic year from September 1, 1987, through June 30, 1988, serving as both a school psychologist and an LDTC. Spotswood rehired her for the following academic year, and she began employment, but on November 17, 1988, she was injured on the job and was forced to take a leave of absence. Kletzkin received full salary during that leave pursuant to *N.J.S.A.* 18A:30–2.1. On April 11, 1989, Spotswood terminated Kletzkin, who was still on leave, and hired a new LDTC for the 1989–90 school year.

Kletzkin claimed that Spotswood could not fire her, except for cause and in compliance with the applicable procedures, because she had acquired tenure while on leave. Kletzkin alleged that she had met the requirements of paragraph (c) of *N.J.S.A.* 18A:28–5 because by January 14, 1989, she had been an employee of Spotswood for "[t]he equivalent of more than three academic years within a period of any four consecutive academic years." (An academic year is defined by *N.J.S.A.* 18A:1–1 as the period between the time school opens after the general summer vacation until the next succeeding summer vacation; in the case of the Spotswood school district, that period is from September 1 to June 30, or ten months.) Kletzkin had begun employment in the middle of an academic year and had subsequently been hired for, but had not completed, three full academic-year contracts. Hence, she

does not argue that she meets the requisites of paragraph (a) or (b) of the tenure statute, which require either employment for a period of three consecutive calendar years or employment for three consecutive academic years together with employment at the beginning of the next succeeding academic year.

## II

### A

The tenure statute was enacted to protect teachers from the vicissitudes of school board elections and resulting arbitrary dismissals. *See Zimmerman v. Board of Educ.*, 38 *N.J.* 65, 71, 183 *A.*2d 25 (1962) ("The objectives [of the tenure statute] are to protect competent and qualified teachers in the security of their positions during good behavior, and to protect them, after they have undergone an adequate probationary period, against removal for unfounded, flimsy, or political reasons."), *cert. denied*, 371 *U.S.* 956, 83 *S.Ct.* 508, 9 *L.Ed.*2d 502 (1963). A school board cannot fire a tenured teacher without "just cause" such as inefficiency, incapacity, or conduct unbecoming a teaching-staff member. *N.J.S.A.* 18A:6–10. To discharge a tenured teacher, a school board must file written charges and hold a hearing. *Ibid.* A contested dismissal of a tenured teacher can "take years" and "cost districts hundreds of thousands of dollars." Ovetta Wiggins, *Anti–Tenure Coalition Lobbying Trustees, The Record* (Hackensack, N.J.), May 20, 1994, at C–1, C–2.

In recognition of the relative permanency accorded by tenure status, *N.J.S.A.* 18A:28–5 grants tenure to a teacher only after affording school boards a substantial probationary period during which to evaluate the teacher. In the probationary period the teacher can be fired for any non-discriminatory reason. *See Gilchrist v. Board of Educ.*, 155 *N.J.Super.* 358, 367, 382 *A.*2d 946 (App.Div.1978); *see also Donaldson v. Board of Educ.*, 65 *N.J.* 236, 241, 320 *A.*2d 857 (1974) ("The board's determination not to grant tenure need not be grounded on unsatisfactory classroom or

professional performance * * *.").   A teacher dismissed prior to the completion of the probationary period will not acquire tenure, regardless of whether that teacher has an employment contract for a period in which tenure would have been obtained if the teacher had continued teaching.   *Canfield v. Board of Educ.*, 51 *N.J.* 400, 241 *A.*2d 233 (1968), *rev'g on dissent below* 97 *N.J.Super.* 483, 490, 235 *A.*2d 470 (App.Div.1967).

The evaluative purpose of the probationary period is emphasized by the statutory mandate of *N.J.S.A.* 18A:27–3.1, which provides that school boards must have each nontenured teacher

observed and evaluated in the performance of her or his duties at least three times during each school year but not less than once during each semester.  * * * The purpose of this procedure is to recommend as to reemployment, identify any deficiencies, extend assistance for their correction and improve professional competence.

In Kletzkin's case, her absence prevented the school board from making the final required evaluation of her performance.

The history of the tenure statute suggests that the Legislature contemplated a period of teaching service in requiring "employment" for a minimum term.   In 1934, the Legislature amended the statute to reverse the effect of a State Board of Education decision that denied tenure to teachers who worked only during the academic year and not for full calendar years.   The amendment was intended to assure "that a teacher was protected in her employment after three consecutive calendar years of *service* or upon beginning the fourth consecutive academic year of *service.*" *Sponsor Statement to Senate Bill No. 31* (1935) (emphasis added). In 1935, the Legislature, concerned that language used in the 1934 amendment would invite interpretations that would "shorten the probationary period," clarified the academic-year provision by adding the present language of paragraph (b).   *Ibid.*

With regard to paragraph (c) of *N.J.S.A.* 18A:28–5, setting forth the probationary period allegedly fulfilled by Kletzkin, the Sponsor Statement noted that the law was intended

to provide for teachers[ ] who aggregate the equivalent of more than three academic years of *teaching service* in any school district, within a period of four

consecutive academic years, the same tenure of position [that] the present law provides for teachers who *teach* three calendar years or three consecutive academic years and are employed at the beginning of the fourth academic year.

[*Sponsor Statement to Assembly Bill No. 81* (1940) (emphasis added).]

Our prior cases have interpreted the tenure statute to require service for the statutory period. In *Zimmerman, supra,* a teacher alleging that he had acquired tenure prior to the school board's termination of his employment argued that the statutory tenure period began running on the date a contract to teach for the next academic year was signed. 38 *N.J.* at 67, 183 *A.*2d 25. The Court rejected that argument and found that "employment" did not commence until the teacher began teaching. *Id.* at 73–74, 183 *A.*2d 25. Although *Zimmerman* did not address whether "employment" would include periods of paid absence, its language suggests that mere contractual status would not suffice even after a teacher has begun teaching:

[I]f appellant's interpretation of the word "employment" were to be adopted, tenure would be acquired in many instances before the teacher had completed teaching for three academic years. That interpretation would also shorten the length of the minimum probationary period specified in terms of "academic" years as the latter is defined in the last paragraph of [the tenure statute]. Such a reading would clearly detract from the statutory purpose.

[*Ibid.*]

See also *Dennery v. Board of Education,* 131 *N.J.* 626, 638, 622 *A.*2d 858 (1993) ("[T]enure accrues to a teaching staff member under a certificate only if he or she has also served in a position under that same certificate for a requisite period of time."); *Spiewak v. Board of Education,* 90 *N.J.* 63, 74, 447 *A.*2d 140 (1982) ("By the express terms of these statutes, an employee of a board of education is entitled to tenure if (1) she works in a position for which a teaching certificate is required; (2) she holds the appropriate certificate; and (3) she has served the requisite period of time.").

B

School-district employees who are steadily employed by the board of education or protected by tenure in their employment are

allowed sick leave with full pay for a minimum of ten school days in an academic year. *N.J.S.A.* 18A:30–2. If an employee entitled to sick leave is absent due to an injury that arose out of and in the course of employment, the school board must pay the employee full salary for the period of absence for up to one calendar year without charging such absence to annual sick leave or to accumulated sick leave. *N.J.S.A.* 18A:30–2.1. Any amount paid to an employee under the statute is reduced by the amount of any workers' compensation award made for temporary disability. *Ibid.* The majority notes that *N.J.S.A.* 18A:30–2.1 refers to a teacher on disability leave as an "employee," and from that reference extrapolates that time spent on disability leave constitutes "employment" for the purposes of the tenure statute, *N.J.S.A.* 18A:28–5. *Ante* at 279–280, 642 A.2d at 994–995.

The tenure statute and its relevant amendments, see *L.*1909, *c.* 243; *L.*1934, *c.* 188; *L.*1935, *c.* 27; *L.*1940, *c.* 43, were enacted prior to the statutes providing for sick leave and paid leave for work-related injuries, *see L.*1954, *c.* 188; *L.*1959, *c.* 175. The legislative history of those laws and of the act recodifying those laws, see *L.*1967, *c.* 271, do not address whether "employment" in the tenure statute was intended to include such absences. As originally enacted, *N.J.S.A.* 18A:30–2.1 provided that a board of education "may pay * * * up to the full salary" for a teacher's absence due to an injury on the job without charging that absence to sick-leave time. *L.*1959, *c.* 175. The statute was amended in 1967 to make payment of full salary to disabled teachers mandatory by replacing "may pay" with "shall pay," and "up to the full salary" with "full salary." *L.*1967, *c.* 168. The Sponsor Statement noted that the amendment "would eliminate the unfair practice of charging teacher absence due to injuries or illness arising from employment against the annual or accumulated sick leave." *Sponsor Statement to Assembly Bill No. 357* (1967). Subsequent case law observed that "the express function of *N.J.S.A.* 18A:30–2.1 is to complement workers' compensation benefits for a strictly limited time period." *Forgash v. Lower Camden County School,* 208 *N.J.Super.* 461, 466–67, 506 A.2d 356 (App.Div.1985); *accord*

*Theodore v. Dover Bd. of Educ.*, 183 *N.J.Super.* 407, 416, 444 *A.*2d 60 (App.Div.1982). Neither the legislative history nor the case law suggests the existence of any relationship between tenure and a teacher's right to receive pay during an absence caused by a job-related injury.

### III

Under the Court's decision, a teacher acquires tenure regardless of whether the teacher actually teaches for the full probationary period. That result runs counter to the Court's decision in *Canfield, supra*, 51 *N.J.* 400, 241 *A.*2d 233, and undermines the evaluative purposes of the tenure statute. *See Zimmerman, supra*, 38 *N.J.* at 73–74, 183 *A.*2d 25 (stating that interpretation of "employment" that would "shorten the length of the minimum probationary period * * * would clearly detract from the statutory purpose").

In enacting the tenure statute, the Legislature made a judgment regarding the appropriate length of the probationary period during which a school board may review a teacher's performance. A school board may also establish a shorter probationary period, *N.J.S.A.* 18A:28–5(a), but Spotswood has not done so, relying instead on the term established by statute. Although the majority states that it "recognize[s] the importance of a probationary period as a means of assessing a teacher's performance," *ante* at 280, 642 *A.*2d at 995, the Court, in finding that Spotswood "had ample opportunity to assess [Kletzkin] over twenty-eight months during four school years," *ibid.*, essentially substitutes its own judgment of the appropriate review period for that made by the Legislature and adopted by Spotswood.

Kletzkin worked for twenty-eight months during four consecutive academic years, only two months short of the period of service that the statute requires. See *N.J.S.A.* 18A:28–5(c). The Court's decision, however, will allow a teacher who has taught for less time to acquire tenure. The Court's opinion, "reject[ing] Spotswood's argument * * * that the statute requires that a teacher

render a full thirty months of active service during the probationary period," *ante* at 280, 642 *A.*2d at 995, would allow not only disability leaves pursuant to *N.J.S.A.* 18A:30–2.1 but also any "leave of absence" to be considered as "employment" for tenure purposes. *Id.* at 280, 642 *A.*2d at 995. Given the variety of leaves available to teaching-staff members, including those authorized by New Jersey's Family Leave Act, see *N.J.S.A.* 34:11B–3 to –4 (providing that employees are entitled to leave of twelve weeks in any twenty-four month period to provide care in the event of birth or adoption of child, or serious health condition of family member); the federal Family and Medical Leave Act, see 29 *U.S.C.A.* § 2612 (providing that employees are entitled to leave of twelve weeks during any twelve-month period because of birth or adoption of child, or because of serious health condition of employee, or to care for seriously-ill family member); and leaves granted for personal or professional reasons on a case-by-case basis or pursuant to contract, see *N.J.S.A.* 18A:30–7 (allowing school boards by rule or individual consideration to pay salary in cases of absence not constituting sick leave), the Court's decision will have significant ramifications for school boards in their evaluations of probationary teachers.

Although *N.J.S.A.* 18A:30–2.1 fulfills the laudable objectives of not penalizing teachers for injuries encountered on the job and of providing an incentive to school boards to create safe work environments, nothing in its language or legislative history indicates that the statute also was intended to allow teachers to satisfy the requirements of the tenure statute while on leave. Such an intent seems unlikely, because the underlying purpose of the probationary period can be achieved only when a teacher is working and subject to the evaluation of the school board. The family-leave legislation recently enacted by both the State and the federal governments contains language strongly suggesting that absences pursuant to that legislation would not be credited toward tenure. The New Jersey Family Leave Act provides that on expiration of a leave, an employee shall be restored to "the position held by the employee *when the leave commenced* or to an

*equivalent position of like seniority, status,* employment benefits, pay, *and other terms and conditions of employment." N.J.S.A.* 34:11B–7 (emphasis added). The federal Family and Medical Leave Act states that no seniority or employment benefits shall accrue during any period of leave. 29 *U.S.C.A.* § 2614(a)(3).

Not all absences would interfere significantly with a school board's duty to evaluate probationary teachers. Thus, in *Board of Education v. Wall,* 119 *N.J.L.* 308, 196 *A.* 663 (Sup.Ct.1938), a case concerning a teacher employed on a *per diem* basis, the court stated that "[a] mere occasional absence of a teacher by reason of illness or excuse" cannot disturb a teacher's right to tenure. *Id.* at 309, 196 *A.* 663. Accordingly, periodic absences due to illness are contemplated by *N.J.S.A.* 18A:30–2, the statute that provides teachers with an annual allotment of sick days, and those absences should not interrupt a teacher's acquisition of tenure. However, the paid leave of up to one calendar year allowed under *N.J.S.A.* 18A:30–2.1 is not the kind of short-term absence that should be accommodated within the tenure probationary period.

In holding that Kletzkin had acquired tenure while on leave, the Appellate Division noted that "the effect of this holding upon a local school board, hesitant to grant tenure to a work-injured employee on involuntary leave, is simply to require that timely notice of dismissal or non-renewal must be given before expiration of the * * * tenure period." 261 *N.J.Super.* 549, 552, 619 *A.*2d 621 (1993). Such a dismissal, however, might be challenged as inconsistent with the statutory mandate against discharge of an employee for claiming workers' compensation benefits, see *N.J.S.A.* 34:15–39.1, and could expose a school board to suits by dismissed disabled employees for retaliatory discharge. See *Lally v. Copygraphics,* 85 *N.J.* 668, 671, 428 *A.*2d 1317 (1981) (holding that *N.J.S.A.* 34:15–39.1 and –39.2 establish common-law cause of action for retaliatory firing).

Not crediting a teacher's time on leave towards acquisition of tenure is preferable, both for the teacher and the school board, to dismissal of the teacher while out on leave. If the leave is

discounted, a teacher is not significantly prejudiced in the acquisition of tenure but is required merely to serve a period of time equal to that of teachers who do not take leave. The tenure statute allows a teacher who but for a leave of absence would have acquired tenure under either the calendar- or academic-year provisions of *N.J.S.A.* 18A:28–5 to acquire tenure within four years by accumulating the equivalent of more than three academic years of service. The requirement of more than three academic years of service within four consecutive academic years allows sufficient flexibility to accommodate a leave of absence of up to ten months. Furthermore, *N.J.S.A.* 18A:28–5(c) provides that employment for the equivalent of more than three academic years in *any* four consecutive academic years will result in the acquisition of tenure, thereby allowing for the four-year period of review to be shifted forward to account for leaves of absence.

Kletzkin, a mid-year hire, would have gained tenure if she had returned to service within the academic year in which she was injured and worked for two months. Kletzkin was dismissed in April before she was able to return to her job. The reason for that dismissal is not known, but it may reflect the pressure imposed on school boards by *N.J.S.A.* 18A:27–10, which at the time of Kletzkin's employment required school boards to give notice to nontenured teachers regarding their employment for the next year by April 30, as well as Spotswood's apprehension that Kletzkin, who had been on leave for five months, would be unable to serve during the next academic year. If Kletzkin had not been dismissed but had been offered a new contract, she would have lost credit for the more than five months of service in her first academic year but would have gained tenure under *N.J.S.A.* 18A:28–5(c) after working about seven and one-half months during the following academic year.

## IV

The Legislature required "employment" for a proscribed probationary period so that a school board could decide which teachers

were qualified and should acquire tenure. A school board cannot evaluate a teacher who is on leave, whether that leave is voluntary or involuntary, and therefore cannot make an informed decision to grant the teacher the job security that tenure provides. The Court's holding, that "employment" in the tenure context does not require availability to teach, circumvents the purpose of the statutory probationary period.

I would reverse the judgment of the Appellate Division.

*For affirmance*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN and GARIBALDI—5.

*For reversal*—Justices CLIFFORD and STEIN—2.