NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.   A-4826-12T1

DARCY J. KOLODZIEJ,

    Petitioner-Appellant,

    v.

BOARD OF EDUCATION OF SOUTHERN
REGIONAL HIGH SCHOOL DISTRICT,
OCEAN COUNTY,

    Respondent-Respondent.

APPROVED FOR PUBLICATION

July 25, 2014

APPELLATE DIVISION

---

Submitted June 24, 2014 - Decided July 25, 2014

Before Judges Parrillo, Messano and Alvarez.

On appeal from the Commissioner of
Education, Docket No. 188-7/07.

Zazzali, Fagella, Nowak, Kleinbaum &
Friedman, P.C., attorneys for appellant
(Aileen M. O'Driscoll, of counsel and on the
briefs).

Berry Sahradnik Kotzas & Benson, P.C.,
attorneys for respondent Board of Education
of Southern Regional High School District,
Ocean County (Mathew B. Thompson, on the
brief).

John J. Hoffman, Acting Attorney General,
attorney for respondent Commissioner of
Education (Caroline Jones, Deputy Attorney
General, on the brief).

The opinion of the court was delivered by
PARRILLO, P.J.A.D.

Petitioner Darcy Kolodziej appeals from a final decision of the Commissioner of Education, finding that she had not attained tenure, due to an interruption in service because of a year-long maternity leave, when she was laid off in April 2007, and thus that she was not entitled to be rehired when a position became available in August 2007. We disagree that petitioner's maternity leave interrupted her period of service to achieve tenure, and remand to the agency to determine whether petitioner had attained the seniority to be automatically rehired when the position became available and, if so, the measure of her damages.

Petitioner began working as a full-time health and physical education teacher for the Southern Regional High School Board of Education (Board) in 2002. She was employed in this capacity for the complete 2002-2003, 2003-2004 and 2004-2005 academic years. On September 1, 2005, petitioner began a Board-approved unpaid maternity leave, which lasted until June 30, 2006. Petitioner returned to work on September 1, 2006 and was continuously employed through the end of the 2006-2007 school year. On April 27, 2007, petitioner received notice that her

position with the Board would be terminated effective September 1, 2007, pursuant to a reduction in force (RIF) plan.

During her first three years of employment, petitioner had been evaluated as required for the granting of tenure status under N.J.S.A. 18A:28-5(b). However, as of the end of the 2006-2007 school year, the Board had not granted petitioner tenure. Thus, in August 2007, when a physical education position became available, petitioner was not among those considered to fill it; the position instead went to another teacher, who had been granted tenure and placed on a recall list as part of the RIF plan.

On July 2, 2007, petitioner filed an appeal with the Department of Education (DOE), claiming that she was entitled to tenure protection and status under the RIF plan. The case was sent to the Office of Administrative Law (OAL) for hearing. In a series of partial summary decisions, the administrative law judge (ALJ) found that the petitioner had acquired tenure before the RIF plan and thus that her tenure rights had been violated under its provisions. The ALJ ordered that petitioner be reinstated to her former position as a physical education teacher and that she be granted back pay of $137,212 for the 2007-2008, 2008-2009 and 2009-2010 school years as well as seniority credit for those years. In a final decision of April

5, 2013, the ALJ confirmed all these prior decisions, and noted that petitioner had waived her right to incidental damages including health care costs and various tax credits.

On May 16, 2013, the Commissioner of Education (Commissioner) rejected this decision, concluding that petitioner had not attained tenure at the time of her dismissal in 2007. Having so determined, the Commissioner did not address the issue of petitioner's seniority and thus concluded that she was not entitled to any relief.

Petitioner appeals from the Commissioner's decision, arguing

> I. THE COURT SHOULD REVERSE THE DECISION OF THE COMMISSIONER BECAUSE IT IS INCONSISTENT WITH, AND/OR IMPROPERLY APPLIES[,] N.J.S.A. 18A:28-5 AND RELEVANT CASE LAW.
>
> II. ASSUMING TH[E] COURT REVERSES THE COMMISSIONER'S DECISION, THE ALJ'S DECISION THAT [PETITIONER] WAS TENURED AT THE TIME OF THE DISTRICT'S REDUCTION IN FORCE AND HAD GREATER SENIORITY THAN SEVERAL OTHER TEACHING STAFF MEMBERS ASSIGNED TO POSITIONS AS PHYSICAL EDUCATION TEACHERS, AND WAS AND IS ENTITLED TO HER POSITION AS A TEACHER OF PHYSICAL EDUCATION[,] SHOULD BE AFFIRMED.
>
> III. THE FEDERAL FAMILY LEAVE ACT, THE DISTRICT FAMILY LEAVE POLICY AND THE PARTIES' COLLECTIVE BARGAINING AGREEMENT DID NOT PRECLUDE [PETITIONER]

FROM ACQUIRING SENIORITY WHILE ON
MATERNITY LEAVE.

It is a well-settled principle of judicial review of administrative agency decisions that we will "accord a strong presumption of reasonableness to such decisions and do not substitute our judgment for the wisdom of agency action if that action is statutorily authorized and not arbitrary and unreasonable." A.M.S. ex rel. A.D.S. v. Bd. of Educ., 409 N.J. Super. 149, 159 (App. Div. 2009). However, we are not bound by an agency's interpretation of a statute. Russo v. Bd. of Trustees, 206 N.J. 14, 27 (2011). Instead, we review the interpretation of a statute de novo. Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 300 (2011).

Relevant here, the Tenure Act, N.J.S.A. 18A:28-5(a) provides:

> The services of all teaching staff members employed prior to the effective date of P.L.2012, c.26 [N.J.S.A. 18A:6-117 to -129] in the position[] of teacher, . . . serving in any school district or under any board of education, . . . shall be under tenure during good behavior and efficiency and they shall not be dismissed or reduced in compensation except for inefficiency, incapacity, or conduct unbecoming such a teaching staff member or other just cause and then only in the manner prescribed by subarticle B of article 2 of chapter 6 of this Title [N.J.S.A. 18A:6-9 to -25], after employment in such district or by such board for:

> (1)  Three consecutive calendar years,
>      or any shorter period which may be
>      fixed by the employing board for
>      such purpose; or
>
> (2)  Three consecutive academic years,
>      together with employment at the
>      beginning of the next succeeding
>      academic year; or
>
> (3)  The equivalent of more than three
>      academic years within a period of
>      any four consecutive academic
>      years.

The parties agree that petitioner worked as a teacher for three consecutive academic years, from 2002 to 2005. Thus, the question of whether petitioner achieved tenure before her dismissal in 2007 turns on whether she fulfilled the conditions in (2) or (3), i.e., whether petitioner's unpaid leave of absence under the Family and Medical Leave Act (FMLA) constituted continued employment at the beginning of the next succeeding academic year or at any point during the year. The Commissioner concluded that petitioner's leave represented a break in employment, which prevented petitioner from achieving tenure notwithstanding the three years of continuous employment and tenure evaluations that preceded the leave. We disagree.

We have found no case law directly on point as to whether maternity leave constitutes continued employment under N.J.S.A. 18A:28-5(a). Nevertheless, our courts have considered the effect that other types of leave might have on tenure status.

6                                                          A-4826-12T1

Our Court has noted that "'continuous employment' exists notwithstanding the 'mere occasional absence of a teacher by reason of illness or excuse.'" Kletzkin v. Bd. of Educ., 136 N.J. 275, 279 (1994) (quoting Bd. of Educ. v. Wall, 119 N.J.L. 308, 309-10 (Sup. Ct. 1938)). In Kletzkin, supra, 136 N.J. at 280, the Court concluded that a teacher, who was on leave due to a work-related injury for four months during the required three-year tenure probation period, still had acquired tenure, even though she did not actively work during the full period. In reaching this decision, the Court noted that there had been ample time to evaluate the employee during the twenty-eight months she had been actively working. Ibid. Moreover, the Court specifically noted that "an employee on a leave of absence remains an employee." Ibid.; see also Ward v. Keenan, 3 N.J. 298, 310-11 (1949) (noting that a police officer's leave of absence did not constitute a "complete severance of responsibility" and so he could not "lose his tenure during good behavior" while on leave); Blinn v. Bd. of Trustees, 173 N.J. Super. 277, 278 (App. Div. 1980) (noting that "the phrase 'leave of absence' itself 'connotes a continuity of the employment status'") (citations omitted).

Although the Commissioner distinguished Kletzkin, on the grounds that it involved an involuntary, work-related leave, we

see no meaningful distinction for present purposes. Like in Kletzkin, supra, the Board here had an adequate period, thirty months, in which to evaluate petitioner's fitness for tenure, and did, in fact, evaluate her the requisite number of times in that period. See Bd. of Educ. v. Raubinger, 78 N.J. Super. 90, 100 (App. Div. 1963) ("Three full years are a sufficient term within which a board of education may judge the competency of a teacher, principal or superintendent. It is also a reasonable period for one in the teaching profession to be expected to demonstrate his or her capacity before achieving tenure status."). Thus, concerns about evaluation are irrelevant here.

Moreover, petitioner did, in fact, return to work in the same position when her allowed leave had expired. There is nothing to suggest, therefore, that petitioner did not remain an employee throughout the time she was on leave, albeit an inactive one for the 2005-2006 academic year. The employment relationship did not cease during her leave; she was not rehired at the beginning of the 2006-2007 year, undergoing a new interview and hiring process, but rather simply returned to work.

Additionally, interpreting the statute to allow tenure in this case fits within the public policy purposes of the Tenure Act and the FMLA, under which petitioner took her leave. The

FMLA was developed "to entitle employees to take reasonable leave . . . for the birth or adoption of a child . . . ." 29 U.S.C.A. § 2601(b)(2). Recognizing that "due to the nature of the roles of men and women in our society, the primary responsibility for family caretaking often falls on women, and such responsibility affects the working lives of women more than it affects the working lives of men[,]" one of its explicit goals is "to promote . . . equal employment opportunity for women and men[.]" 29 U.S.C.A. § 2601(a)(5) & (b)(5). The FMLA specifically provides that a returning employee is "to be restored by the employer to the position of employment held by the employee when the leave commenced; or to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C.A. § 2614(a)(1). And, importantly, the leave "shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced." 29 U.S.C.A. § 2614(a)(2). Thus, it is clear that the FMLA seeks to return the employee to the same position that he or she was in before the leave, treating the leave itself not as a cessation, but instead as a temporary pause in the ongoing working relationship. To therefore punish an employee by denying her tenure she had earned over three years of continuous employment and satisfactory evaluations

simply because she took the leave that her employer granted her, would not serve the purpose of the FMLA.

The Board argues that the FMLA itself contains language which prevents petitioner from acquiring tenure while on leave. 29 U.S.C.A. § 2614(a)(3) provides:

> Nothing in this section shall be construed to entitle any restored employee to
>
> (A) the accrual of any seniority or employment benefits during any period of leave; or
>
> (B) any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.

However, this section merely prevents the FMLA from establishing new or increased rights other than those specifically enumerated; it does not supersede state statutes that provide other rights nor does it prohibit states from guaranteeing those rights separately. See 29 C.F.R. § 825.215(d)(2) ("An employee may, but is not entitled to, accrue any additional benefits or seniority during unpaid FMLA leave."). Thus, by adopting the Board's interpretation of the statute, we would be adopting a position that penalizes pregnant employees by returning them not to the same position as of the day they went on leave, but rather to a new, worsened position, one for which the tenure

clock must reset.  This would utterly defeat the purpose of the FMLA, which is to preserve the rights of employees granted leave, not to penalize them for taking such leave.

Our own Family Leave Act, N.J.S.A. 34:11B-1 to -16, further illustrates this public policy goal of protecting employees who take such leaves of absence.  In N.J.S.A. 34:11B-2, our Legislature declared that "employees should be entitled to take a period of leave upon the birth . . . of a child . . . without risk of termination of employment . . . and without loss of certain benefits."  To that end, like the FMLA, the Family Leave Act provides that an employee is "entitled to be restored to the position held by the employee when the leave commenced or to an equivalent position of like seniority, status, employment benefits, pay, and other terms and conditions of employment." N.J.S.A. 34:11B-7.  The Act further provides that the employee "shall retain all rights under any applicable layoff and recall system, including a system under a collective bargaining agreement, as if the employee had not taken the leave."  Ibid. Thus, like the FMLA, our statutory authority reveals an intent to return an employee on maternity leave to the same position she was in before she took the leave; in other words, our public policy also favors treating petitioner as though her leave did

not occur since she otherwise would have gained tenure on September 1, 2005.

Because petitioner remained an employee even during her maternity leave and because the principles underlying the FMLA and our own Family Leave Act encourage an interpretation that preserves the rights of our pregnant employees, we find that petitioner's tenure rights were maintained even though she went on leave, and thus that she was tenured as of the beginning of her leave on September 1, 2005.

As such, petitioner claims that she is entitled to relief because at the time of the RIF plan in April 2007, she had acquired three years and nine months of seniority, which allegedly was a greater amount of seniority time than that acquired by the individual who ultimately obtained the vacant position in the physical education department in August 2007. To arrive at this number, however, petitioner includes thirty days of credit acquired during the 2005-2006 academic year when she was on leave. Petitioner relies on N.J.A.C. 6A:32-5.1(b) to support her contention that the thirty days may be included:

> Seniority, pursuant to N.J.S.A. 18A:29-9 et seq., shall be determined according to the number of academic or calendar years of employment, or fraction thereof, as the case may be, in the school district in specific categories as hereinafter provided. The periods of unpaid absences not exceeding 30 calendar days aggregate in one academic or

> calendar year, leaves of absence at full or partial pay and unpaid absences granted for study or research shall be credited toward seniority. All other unpaid absences or leaves of absence shall not receive seniority credit.

> [(emphasis added).]

Petitioner claims that the phrase "[t]he periods of unpaid absences not exceeding 30 calendar days aggregate in one academic or calendar year . . . shall be credited toward seniority" should be interpreted as allowing her a thirty-day seniority credit from her ten-months of unpaid leave.

As noted, because he found that petitioner did not attain tenure, the Commissioner did not address the issue of her seniority or entitlement to damages. Specifically, the Commissioner did not determine whether petitioner's interpretation of N.J.A.C. 6A:32-5.1(b) (as allowing her a thirty-day seniority credit from her ten-months of unpaid leave) was correct or whether the regulation should be construed as permitting the consideration of only periods of absence of less than thirty days in calculating seniority time. The proper interpretation of N.J.A.C. 6A:32-5.1(b) is thus determinative of petitioner's seniority rights[1] and its resolution, we find, is

---

[1] It appears that without those thirty days, petitioner had three years and eight months of seniority, which was equal to the amount of seniority time held by the teacher who assumed the
(continued)

best left to the agency charged with its enforcement. We therefore remand the matter to the Commissioner for a determination of petitioner's seniority rights and any consequent entitlement to relief.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

(continued)
vacant position in August 2007. If so, petitioner would not be automatically entitled to that position based on seniority, but rather would have, at most, been considered with the other teacher for the position. However, when two teachers have the same seniority time, the Board is empowered to choose between the two.

A-4826-12T1