JOSEPH F. MORIARITY, PROSECUTOR, v. THE BOARD OF EDUCATION OF THE CITY OF GARFIELD, IN THE COUNTY OF BERGEN, A CORPORATION, RESPONDENT.

Argued January 16, 1945—Decided May 22, 1945.

Before BROGAN, CHIEF JUSTICE, and Justices DONGES and PERSKIE.

For the prosecutor, *Saul R. Alexander.*

For the respondent, *Edward Lukacsko* and *Winne & Banta* (*Walter G. Winne,* of counsel).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. *Certiorari* was allowed to review a resolution of the Board of Education of the City of Gar-

field declaring vacant the "office of Supervising Principal * * * as of September 30th, 1944." The prosecutor had theretofore been employed by contract with the Board of Education as superintendent of schools of the City of Garfield for a five year term which began October 1st, 1939. At the time of the making of the contract the school affairs of the municipality were regulated by and conducted in accordance with the provisions of *R. S.* 18:6-1, *et seq.* On December 2d, 1943, the people of Garfield, by referendum, elected to have their school system conducted under the provisions of *R. S.* 18:7-1.

Under the statute first mentioned, *supra,* provision is made for the appointment of a superintendent of schools for a term not to exceed five years or, in the alternative, "without term to continue at the pleasure of the Board" of Education. In the statute adopted by the citizens of Garfield at the election held for that purpose, provision is found (*R. S.* 18:7-70) for the appointment of "a supervising principal of schools" if the necessity for such principal shall have been "agreed to in writing by the county superintendent of schools and approved by the Commissioner [of Education] and the State Board."

On December 3d, 1943, the day following the adoption of *R. S.* 18:7-1, *et seq.,* a new board of education was organized in accordance with the provisions of that statute. It functioned until February 14th, 1944, at which time another board of education was officially organized. On July 11th, 1944, the district clerk of the Board of Education, pursuant to the Board's direction, made application to the county superintendent of schools for "approval of the office of supervising principal;" on September 21st, 1944, advice was received from the State Board that at its meeting of September 8th, 1944, it had "approved the position of supervising principal" for the school district.

The prosecutor is an honorably discharged veteran of World War No. 1, holds a permanent supervisor's certificate and a permanent school administrator's certificate which qualify him for appointment as supervising principal of schools under the rules of the Board of Education. During his five years of service no complaint of any kind was lodged against him.

The resolution ending his service was passed on the day on which his contract, by its term, expired. The prosecutor, contending against the validity of the resolution which declared his employment at an end, claims that in the facts and circumstances surrounding his service, subsequent to the referendum, he acquired tenure in the post of "supervising principal."

It is pointed out that in the proofs before us it appears that on January 10th, 1944, the local Board of Education passed a resolution announcing a policy of giving "first preference for any vacancy in the Garfield school system" to honorably discharged veterans of World War No. 1 or 2, so long as such veterans were qualified for any vacancy. That announced policy was not followed in this instance.

Taking up prosecutor's arguments, it is first said that the legislature may bestow tenure on veterans employed by non-continuous bodies (such as boards of education) and has done so by the statute, $R.$ $S.$ 38:16–1, as amended by chapter 83, $Pamph.$ $L.$ 1942. Generally, that statute provides that an honorably discharged veteran (soldier, sailor, marine or nurse, in any war of the United States, or in the New Jersey State Militia during the period of the World War) might not be dismissed from the service of the state or any of its subdivisions except for cause after a fair and impartial hearing. There is in the statute an important exception both in the act, as written in the Revision of 1937, and in the amendment of 1942: that the tenure so granted shall not extend to those who accept appointment to an office or position the term of which is fixed by law. The prosecutor accepted employment as superintendent of schools by contract for a five year term. That term was fixed by law in the sense that the statute prescribed a five year period as the maximum length of service for which the Board might employ a superintendent of schools by express contract. $R.$ $S.$ 18:6–37.

The next point is that with the adoption by the people of $R.$ $S.$ 18:7–1. $et$ $seq.$, on December 2d, 1943, the contract of employment which, by its terms, did not expire until September 30th, 1944, became a nullity and yet the prosecutor continued as supervisory head of the school system without term. In our view of the case, that circumstance is not important

or relevant. If Dr. Moriarity did not continue after the referendum as superintendent of schools then he had no definite status which the statute recognizes. At least none is pointed out in the argument. That he did continue without change of duties until September 30th, 1944, is conceded. The point is a prelude to the succeeding argument that by the transition from 18:6–1, *et seq.*, to 18:7–1, *et seq.*, in the matter of school affairs, the prosecutor became the supervising principal of schools in accordance with school law. The school board, under the advice of its counsel, treated the prosecutor's contract of employment as subsisting and valid until the end of the term fixed. From this course of conduct by the parties it is argued by the prosecutor that under the statutory plan (*R. S.* 18:7–1, *et seq.*) adopted on referendum, no particular form of appointment was necessary and that the retention of Dr. Moriarity and the action of the Board in applying to the county superintendent of schools for the approval of the office of supervising principal preliminary to seeking the approval of the Commissioner of Education and the State Board, constituted the prosecutor a supervising principal *de jure* or at least *de facto*. It is pointed out that in this interval the prosecutor was mentioned in the minutes of the Board as "supervising principal" after December 3d, 1943, and in several instances during the year 1944; that he signed letters official in nature, as "Supervising Principal." As against this, it appears that he also signed correspondence as "Superintendent of Schools." All of this overlooks the fact that during this time there was no such post as supervising principal in existence in the Garfield school system. The office in question, *i. e.*, supervising principal, could not come into being legally until its creation had the approval prescribed by the statute, 18:7–70. And there was no approval by the State Board until September 8th, 1944; and no notification of such approval received by the local board until September 1st, 1944. The prosecutor could not by any means acquire a *de jure* status for a non-existent office and it is equally clear that a *de facto* status could not be acquired for the same reason.

The writ must be dismissed, but without costs.