286 N.J. Super. 633 (1996)
670 A.2d 73
JOYCE BREITWIESER, PETITIONER-APPELLANT,
v.
STATE-OPERATED SCHOOL DISTRICT OF THE CITY OF JERSEY CITY, HUDSON COUNTY, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted November 15, 1995.
Decided January 25, 1996.
*635 Before Judges KING, KLEINER and HUMPHREYS.
Feintuch, Porwich & Feintuch, attorneys for appellant (Philip Feintuch, of counsel; Alan S. Porwich, on the brief).
Charlotte Kitler, General Counsel, State-Operated School District of Jersey City, attorney for respondent (Ms. Kitler, on the brief).
Deborah T. Poritz, Attorney General of New Jersey, attorney for State Board of Education (Nancy Kaplen, Deputy Attorney General, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
In this case a teacher has attempted to acquire tenure for service under a permanent certificate by tacking on an earlier period of service under an emergency certificate in a different field. The agency refused to permit tacking such periods of unrelated certification. We agree and affirm.
Appellant Joyce Breitwieser was appointed a full-time teacher of the handicapped with the Jersey City School District (District) effective September 1, 1989. In her employment contract, the District recognized that she held an "appropriate Teacher of the Handicapped certificate issued in New Jersey [which was] now in full force and effect." When appointed, Breitwieser held two New Jersey teaching certificates: an Emergency Certificate for Teacher of the Handicapped, valid from September 12, 1989 to July *636 1990, and a permanent certificate as Elementary School Teacher, issued in June 1989. She lacked 18 professional-education credits in the area of special education and did not qualify for a standard (permanent) certificate as Teacher of the Handicapped. She did not obtain or become eligible for a standard certificate as Teacher of the Handicapped during her employment with the District.
In March 1990, Breitwieser requested a transfer from her position as teacher of the handicapped to a position as a Chapter I elementary school teacher, stating "I am not qualified to teach the E.D. [emotionally disturbed] students.... I can see now that it was a mistake to take this position to begin with." Her request was granted and she was transferred to P.S. 3 on March 9, 1990. The District offered her contracts as an elementary school teacher for the 1990-91 and 1991-92 school years and she accepted. She was re-hired as elementary school teacher under contract for the 1992-93 school year. By letter dated December 14, 1992, the District advised her that she was terminated effective February 12, 1993, pursuant to the 60-day notice provision in her contract.
On January 6, 1993 Breitwieser filed a petition with the Commissioner of Education (Commissioner) seeking reinstatement as a teacher with the District, with back pay and other emoluments befitting tenure status. She moved for summary judgment and the District answered and cross-moved for summary judgment on January 21, 1993.
The case was assigned to Judge Weiss of the Office of Administrative Law in February 1993. He ruled in favor of the District in his initial decision of July 19, 1993. He held that Breitwieser's six-month service under the Emergency Certificate as Teacher of the Handicapped did not count in calculating the three-year service period required for tenure under N.J.S.A. 18A:28-5. In August 1993 the Commissioner rendered a final decision upholding Judge Weiss' initial decision. On June 1, 1994 the State Board of Education affirmed the Commissioner's decision for the reasons expressed by Judge Weiss.
*637 The State Board is the agency charged by the legislature with implementing the school laws. The Board's decision is entitled to considerable weight. Bassett v. Oakland Bd. of Ed., 223 N.J. Super. 136, 142-43, 538 A.2d 395 (App.Div. 1988). A decision of the State Board on tenure should not be disturbed unless "palpably arbitrary" or in violation of the law, Kletzkin v. Spotswood Bd. of Ed., 136 N.J. 275, 278, 642 A.2d 993 (1994); Dennery v. Passaic Cty. Reg. H.S. Bd. of Ed., 131 N.J. 626, 643, 622 A.2d 858 (1993), or if unsupported by substantial credible evidence in the record. Henry v. Rahway State Prison, 81 N.J. 571, 580, 410 A.2d 686 (1980); Campbell v. Dep't of Civil Service, 39 N.J. 556, 189 A.2d 712 (1963); Dore v. Bedminster Bd. of Ed., 185 N.J. Super. 447, 452, 449 A.2d 547 (App.Div. 1982). On this standard, we affirm the State Board's decision.
The right to tenure is created and governed entirely by statute. Spiewak v. Rutherford Board of Ed., 90 N.J. 63, 72-73, 76, 447 A.2d 140 (1982). N.J.S.A. 18A:28-5 sets forth the conditions under which public-school teaching staff earn tenure in New Jersey:

The services of all teaching staff members including all teachers, principals other than administrative principals, assistant principals, vice principals, assistant superintendents, and all school nurses including school nurse supervisors, head school nurses, chief school nurses, school nurse coordinators, and any other nurse performing school nursing services and such other employees as are in positions which require them to hold appropriate certificates issued by the board of examiners, serving in any school district or under any board of education, excepting those who are not the holders of proper certificates in full force and effect, shall be under tenure during good behavior and efficiency and they shall not be dismissed or reduced in compensation except for inefficiency, incapacity, or conduct unbecoming such a teaching staff member or other just cause and then only in the manner prescribed by subarticle B of article 2 of Chapter 6 of this title, after employment in such district or by such board for:

(a) Three consecutive calendar years, or any shorter period which may be fixed by the employing board for such purpose; or
(b) Three consecutive academic years, together with employment at the beginning of the next succeeding academic year; or
(c) The equivalent of more than three academic years within a period of any four consecutive academic years. (emphasis added).
N.J.S.A. 18A:1-1 defines a "teaching staff member" as
a member of the professional staff of any district or regional board of education, or any board of education of a county vocational school, holding office, position or *638 employment of such character that the qualifications for such office, position or employment, require him to hold a valid and effective standard, provisional or emergency certificate, appropriate to his office, position or employment, issued by the state board of examiners and includes a school nurse.[1]
N.J.S.A. 18A:28-4 provides that "[n]o teaching staff member shall acquire tenure in any position in the public schools in any school district or under any board of education, who is not the holder of an appropriate certificate for such position, issued by the state board of examiners."
The State Board has promulgated comprehensive regulations to govern the certification of public-school educational personnel. Dennery, supra, 131 N.J. at 643, 622 A.2d 858. The State Board of Examiners issues three categories of educational certificate: the Instructional Certificate, the Administrative Certificate, and the Educational Services Certificate. N.J.A.C. 6:11-2.3. The State Board has also designated "special endorsements" under each category of certificate. Those endorsements coincide with the educational subjects or positions that share common attributes and are grouped under a particular certificate. Dennery, supra, 131 N.J. at 633, 622 A.2d 858. A person may possess multiple endorsements under one category of certificate. Id. at 634, 622 A.2d 858.
There are also three types of certificate. The first type is the standard certificate, a permanent certificate issued to persons who have met all requirements for State certification. N.J.A.C. 6:11-4.1. We use the terms "standard certificate" and "permanent certificate" interchangeably. The second type is the provisional certificate, which is a temporary one-year certificate issued to those who have met the requirements for initial employment as part of a state-approved district training program or residency leading to standard certification. N.J.A.C. 6:11-4.2. The third type is the emergency certificate, which is issued only in the field of educational services, teacher of the handicapped, teacher of the blind and partially-sighted, and teacher of the deaf and hard-of-hearing. *639 N.J.A.C. 6:11-4.3. Emergency certificates are issued only on the application of a public-school district when the district is unable to locate a suitable standard-certified teacher due to unforeseen shortages or other extenuating circumstances. N.J.A.C. 6:11-4.3(b).
We must construe the tenure statute so as to accomplish the intendment of the legislature. Sperry & Hutchinson Co. v. Margetts, 15 N.J. 203, 209, 104 A.2d 310 (1954). While we have said that the tenure statute should be given "liberal support" consistent with "legitimate demands for governmental economy," Viemeister v. Board of Ed. of Borough of Prospect Park, 5 N.J. Super. 215, 68 A.2d 768 (App.Div. 1949) (Jacobs, S.J.A.D.), a teacher does not have a right to tenure without meeting the precise requirements of the tenure statute. Zimmerman v. Newark Board of Ed., 38 N.J. 65, 72, 183 A.2d 25 (1962), cert. denied, 371 U.S. 956, 83 S.Ct. 508, 9 L.Ed.2d 502 (1963); Moriarity v. Garfield Board of Ed., 133 N.J.L. 73, 42 A.2d 465 (Sup.Ct. 1945), aff'd, 134 N.J.L. 356, 46 A.2d 734 (E. & A. 1946); Ahrensfield v. State Bd. of Ed., 126 N.J.L. 543, 19 A.2d 656 (E. & A. 1941); Hansen v. Runnemede Board of Ed., 1983 S.L.D. 1240, 1253 (A.L.J.), aff'd, 1983 S.L.D. 1256 (Comm'r of Ed.); Ulozas v. Matawan Board of Ed., 1975 S.L.D. 604.
Breitwieser correctly frames the issue in this case as: "whether a teaching staff member can acquire tenure for service under a permanent certificate combined with a prior period of service under an emergency certificate in a different field." She contends that this question is one of first impression. We agree that no New Jersey court or agency has squarely addressed this issue.
As the District reminds us, the "proper certificate" which N.J.S.A. 18A:28-5 requires a teacher to hold when claiming tenure must be either a standard certificate or a provisional certificate. Kubas v. Linden Bd. of Ed., 1980 S.L.D. 172, 176 (Comm'r of Ed.); Salerno v. Newark Board of Ed., 1980 S.L.D. 439, 445; K'Burg v. Lower Alloways Creek Bd. of Ed., 1973 S.L.D. 636; Anson v. *640 Bridgeton Bd. of Ed., 1972 S.L.D. 638. See N.J.A.C. 6:11-4.1 (defining standard/permanent certificate); N.J.A.C. 6:11-4.2 (defining provisional certificate). Here, the A.L.J. and the parties agree that Breitwieser satisfies this requirement, as she was the holder of a standard certificate as an elementary school teacher (grades K-8) at the time she claimed tenure.
The requirement that a teacher must hold a standard certificate when seeking tenure does not resolve whether prior service under an emergency certificate may be counted towards the service-period needed for tenure. Breitwieser's standard certificate as an elementary-school teacher is necessary but not sufficient for tenure: she must also show that she served the requisite period of time under a "proper certificate." Her elementary-school standard certificate was a proper certificate, but her service under that certificate alone fell several weeks short of the period required for tenure (March 9, 1990 through February 12, 1993, the date her termination became effective following 60 days' notice). Consequently, she can obtain tenure only if her service under an emergency certification as teacher of the handicapped from September 1989 to March 1990 is "tacked" onto her service under permanent certification as a K-8 teacher.
A teacher may not acquire tenure solely upon service under an emergency certificate. No matter how long a teacher serves under an emergency certificate, tenure is unavailable. Salerno, supra, 1980 S.L.D. at 446. This is because holders of emergency certificates
have not fully satisfied the educational prerequisites for standard certification, nor are they entitled to automatic renewal of the privilege to teach accorded them by the emergency certification process. Because of the uncertainty surrounding continued eligibility to teach, the protection of tenure laws was not intended to extend to holders of substandard certificates and has not been so extended.
Kubas, supra, 1980 S.L.D. at 179-180. Accord Delli Santi v. Newark Board of Ed., 1977 S.L.D. 1211, 1213, 1217, 1219, aff'd, 1978 S.L.D. 1003 (State Bd. of Ed.). The requirement that teachers hold a non-emergency certificate to obtain tenure is appropriate because emergency-certified teachers are by definition *641 unqualified to hold their position. They hold their positions temporarily, subject to termination or nonrenewal as soon as the district locates a provisionally or permanently certified teacher. Accord Hanneman v. Willingboro Bd. of Ed., 1979 S.L.D. 712 (Comm'r Ed.) (finding ultra vires the Board's hiring an emergency-certified carpentry teacher while denying standard-certified carpentry teacher assignment to the position).
Under this reasoning, the Kubas and Delli Santi cases could readily have held that emergency-certificate service can never be considered service under a "proper certificate" and counted towards tenure time under N.J.S.A. 18A:28-5. Indeed, the District tries to portray Kubas as standing for this proposition, stating, "As squarely held by Kubas, the tenure statute simply does not extend to service under an Emergency Certificate." But neither Kubas nor any other case articulates such a broad proposition. On the contrary, in at least six reported instances, referred to as the K'Burg line of cases, a teacher has been allowed to tack emergency service to service under a standard certificate. Smith v. Board of Ed. of Atlantic Cty. Voc-Tech. Sch., 1985 S.L.D. 704; Amato v. Hudson Cty. Area Voc-Tech. Schools Bd. of Ed., # 350-84 (Nov. 8, 1984); Salerno v. Newark Board of Ed., 1980 S.L.D. 439, 445; Smith v. Sayreville Bd. of Ed., 1974 S.L.D. 1095, aff'd, 1976 S.L.D. 1120 (App.Div.); Givens v. Newark Board of Ed., 1974 S.L.D. 906, 907; K'Burg, supra, 1973 S.L.D. 636.
First, in K'Burg itself, petitioner had been employed as a kindergarten teacher under an emergency certificate for a period of nearly five years (September 1968 into 1972-73 academic year). In March 1973 she was informed that her employment would not be renewed for the upcoming 1973-74 academic year. She continued teaching until June 30, 1973. Although petitioner held only an emergency certificate at the time she received the notice of non-reemployment, she was awarded a standard certificate as an elementary school teacher in April 1973. She claimed that she was tenured under N.J.S.A. 18A:28-5 as of April 1973 because at *642 that time she was the "holder of [a] proper certificate[] in full force and effect"  a permanent certificate  and had been employed for more than three consecutive academic years. The Commissioner ruled in favor of K'Burg and allowed her to tack the emergency-certificate service onto the standard-certificate service. K'burg, supra, 197 S.L.D. 636.
Second, in Givens, supra, 1974 S.L.D. at 907, a ten-month period at the beginning of Givens' employment with the Newark Board was counted towards tenure, even though Givens did not receive a standard permanent teaching certificate until the end of the ten-month period. 1974 S.L.D. at 907. Givens had applied for a standard certificate before the start of employment and the delay in processing was not her fault. Ibid. Third, in Smith v. Sayreville, supra, petitioner taught for ten years under an emergency certificate and then became eligible for standard certification in the same subject while still employed. Relying on K'Burg, the Commissioner credited the emergency-certificate service along with the standard-certificate service, and ruled in favor of tenure.
Next, in Salerno, supra, the petitioner, a teacher, served as a high school principal under an emergency certificate issued in October 1972; he received his permanent certificate as a high school principal in July 1974. 1980 S.L.D. at 445. The emergency service was tacked onto the standard service, and he obtained tenure. Fifth, in Amato, supra, petitioner worked as a job placement coordinator under an emergency certificate commencing February 1983 and received a permanent certificate as placement coordinator in March 1984. Amato's service under the emergency certificate was tacked onto the standard-certificate service for purposes of calculating his tenure eligibility. Finally, in Smith v. Atco Voc-Tech, supra, petitioner taught for ten years under an emergency certificate and then became eligible for, but did not receive, a standard certificate in the same subject while still employed. The Commissioner could find no meaningful difference between Smith's eligibility for the standard certificate and *643 the actual possession of the certificate as in K'Burg.[2] 1985 S.L.D. at 717. The Commissioner found that Smith's emergency service was creditable towards tenure and that he had obtained tenure.
The emergency-certificate service is not always excluded from calculation of a teacher's period of service for purposes of the tenure statute. But the K'Burg line of cases can be interpreted in two ways. First, it could stand for the proposition that emergency-certificate service always counts towards tenure on the same basis as standard-certificate service. After all, these six cases all allow counting emergency-certificate service towards tenure the same as standard-certificate service. Breitwieser urges this expansive reading on us. She makes much of the Commissioner's observation in K'Burg that an emergency certificate is expressly recognized as valid both by the Legislature and by the State Board of Education. She also stresses the fact that a reference to emergency certificates as "substandard," N.J.A.C. 6:11-4.3(a), does not detract from their validity. The Commissioner's observation on validity was accurate but is inapposite here. Breitwieser wishes us to infer that a valid certificate is also necessarily a "proper" certificate, so that service under a "valid" certificate may always be counted towards tenure under N.J.S.A. 18A:28-5. This inference is unjustified and does violence to the language of the respective provisions.
Breitwieser's counsel argued to the A.L.J. that because N.J.S.A. "18A:1-1 ... identifies a teaching staff member as one who holds a certificate ... whether it's standard, provisional or emergency ... you ... get credit for that, as long as you're functioning under [any] certificate...." This is simply a conclusory assertion. *644 N.J.S.A. 18A:1-1 says nothing about who gets tenure and under what circumstances; the statute merely defines who is a "teaching staff member." N.J.S.A. 18A:28-5, which does set forth who is entitled to tenure and under what circumstances, does not say that every teacher who teaches for the requisite period of time under any certificate is entitled to tenure. On the contrary, N.J.S.A. 18A:28-5 specifically excludes from tenure protection those who meet N.J.S.A. 18A:1-1's definition of "teaching staff member" but are not holders of a "proper certificate in full force and effect."
As the Commissioner stated in Kubas, supra, 1980 S.L.D. at 179-80:
While possession of a "valid and effective" emergency certificate qualifies a teacher for employment in a district as a teaching staff member under the school laws, N.J.S.A. 18A:1-1, 26-2; N.J.A.C. 6:11-3.4, the statutory provisions governing tenure use different language.
If service under any "valid" certificate, whether standard or substandard, was counted towards tenure, the exception clause in N.J.S.A. 18A:28-5 would be rendered superfluous, confusing the kind of certificate needed for legal employment as a teacher (merely "valid") with the kind needed to earn tenure credit ("proper"). Such a reading would also contravene the principle of statutory construction that every clause is presumed to have some meaning. Kubas, supra, 1980 S.L.D. at 180; Gabin v. Skyline Cabana Club, 54 N.J. 550, 555, 258 A.2d 6 (1969); Abbotts Dairies, Inc. v. Armstrong, 14 N.J. 319, 328, 102 A.2d 372 (1954); 2A Sands, Sutherland Statutory Construction § 46.06 (5th ed. 1992). To avoid this unacceptable result and give force to N.J.S.A. 18A:28-5's exception clause, the K'Burg cases must be understood as narrower in scope than Breitwieser contends.
Our understanding of the K'Burg cases, consistent with the purpose of the tenure scheme, treats them as standing for this more limited proposition: service under an emergency certificate may be counted towards the service needed for tenure only when that service is followed by the teacher ultimately obtaining a permanent certificate in the same field as the emergency certificate. Whatever their other factual variations, every one of the *645 K'Burg cases involved a teacher who received a standard certificate in the same area in which that teacher had served under an emergency certificate.
Delli Santi, supra, 1977 S.L.D. 1211 (Comm'r), aff'd, 1978 S.L.D. 1003 (State Bd.), is an example of this principle. There petitioner worked first as an industrial-arts teacher under an emergency certificate and later as a teacher of English and social studies under a standard certificate. The Commissioner refused to allow the emergency-certificate service to be tacked onto the standard-certificate service. The Commissioner deemed the case "clearly distinguishable" from K'Burg on the grounds that petitioner had never obtained standard certification in industrial arts.
Breitwieser's circumstances in the case before us are likewise clearly distinguishable from the K'Burg cases because she never received a standard certificate as teacher of the handicapped. She attempts to distinguish Delli Santi on the ground that the service which Delli Santi sought to credit towards tenure was service as a substitute teacher. Delli Santi did teach as a per diem substitute for thirteen weeks during a teachers' strike in 1969-70, for four additional days during the 1969-70 school year, and at times during the 1970-71 and 1971-72 school years. 1977 S.L.D. 1211, 1213-14. The Commissioner's decision indeed was based in part on the fact that much of Delli Santi's service was as a substitute teacher. Id. at 1219. Nonetheless, even if Delli Santi is somewhat different from Breitwieser's case on this ground, the K'Burg cases abide and their fundamental principle precludes counting Breitwieser's emergency service towards tenure.
The rule we derive from Delli Santi and the K'Burg cases is quite logical. During service under an emergency certificate, there is no way to be sure that a person will be rehired the next year, let alone receive standard certification in the field. Renewal of an emergency certificate cannot convert service under an emergency certificate into service under a "proper certificate" for purposes of N.J.S.A. 18A:28-5. A district's decision to renew an emergency certificate means only that the district could not locate *646 a qualified teacher, not necessarily that the district was "satisfied" with the performance rendered. Logically, the only inference which necessarily follows from a district's renewal of employment of an emergency certificate holder is that it is not so dissatisfied with the teacher's performance as to decline to renew the employment. Renewal may stand for no more than the district's judgment that continuing the teacher's emergency service is preferable to emergency-certifying another person or leaving the position unfilled.
In sum, renewal of an emergency certificate conveys a weak endorsement of the teacher's work. We perhaps could hold that emergency service can never be service under "a proper certificate" for purposes of tenure, and such a holding would eviscerate Delli Santi, Kubas and the K'Burg cases. But such a harsh rule does not comport with the need to construe our teacher-tenure law sensibly and practically.
A district may hope that an emergency teacher proves to be qualified rather than merely legally employable. The district may even expect or bank on the likelihood that an emergency teacher will become qualified. An emergency teacher's failure to earn the standard certificate in the emergency discipline, however, indicates that the teacher never became qualified to teach in that area and that the district's hope or expectation of the teacher's progress was not fulfilled. Under such circumstances we consider it consistent with a fair-minded construction of the teacher-tenure law to conclude that such a teacher's emergency service was not under an "appropriate certificate" for purposes of the tenure statute.
By contrast, a standard certificate in the field of emergency service implicitly conveys an endorsement of the teacher's emergency service which is both stronger and different in kind than that conveyed by renewal of an emergency certificate. We find it difficult to imagine a standard certificate issuing if the recipient's emergency service in the same field had truly been of poor quality. A teacher's acquisition of a standard certificate in the field of *647 emergency service vindicates to a large extent whatever expectation the district had about the emergency teacher's progress towards certification.
Appellant suggests that the resolution we reach will invite abuses by school districts. Some districts have attempted to evade the tenure statute from time to time. Before N.J.S.A. 18A:28-5(c) was enacted, "local boards ... required [teachers] to resign a few days before the end of a school year as a condition for obtaining an employment contract for the ensuing school year." See, e.g., Norwitz v. Harrison Tp. Bd. of Ed., 128 N.J.L. 13, 23 A.2d 914 (Sup.Ct. 1942); Schulz v. State Bd. of Ed., 132 N.J.L. 345, 40 A.2d 663 (E. & A. 1945) (predecessor of N.J.S.A. 18A:28-5(c), R.S. 18:13-16(c), inspired by just such "artificial splitting of the period of employment ... to avoid application of the tenure statute to a regularly employed, full-time teacher ...").
There are contemporaneous reasons which militate against the likelihood of a school board perpetrating such a tenure-evading scheme. First, existing school law already effectively imposes a good-faith requirement on school boards, because the law allows a board to hire an emergency-certified teacher only when reasonable search efforts fail to locate a qualified, standard-certified teacher. Second, common sense suggests that circumstances will rarely enable a school board to "bounce around" a teacher to exploit the rule we enunciate here. Such a scheme is only possible where the school board has two positions open for which no suitable, permanently certified teacher can be found. This will not often be the case. Even if a board has two such positions, they must be so related that the board would be willing to place the victimized teacher in each one successively. As Judge Weiss observed at the hearing, the law technically allows a school board to place virtually any college-educated person in a position under emergency certification. But such a tenure-evading scheme would very likely evoke the ire of parents' associations, taxpayers and the teachers' union, because it would likely subject students to *648 instruction by persons not properly qualified and to an unstable, revolving, environment.
We doubt the likelihood of the potential abuses suggested by appellant. This case is obviously not such a case. Appellant herself requested the transfer and admitted that she was not qualified for the handicapped teaching position.
Affirmed.
NOTES
[1] "Teacher" is used herein instead of "teaching staff member."
[2] The teacher must either obtain or become eligible for a standard certificate in the appropriate field before the termination of employment. Emergency-certificate service will not be counted where the standard certificate in the field is not received until after the termination date. In Kubas, supra, 1980 S.L.D. 172, petitioner held only an emergency certificate in cosmetology during her entire length of service, from September 1973 to the effective date of her termination in May 1977. Ibid. She received her standard certification in June 1977 but was denied tenure.