796 A.2d 203

ANTHONY MERLINO, PLAINTIFF–RESPONDENT, v. BOROUGH OF MIDLAND PARK, MAYOR AND COUNCIL OF THE BOROUGH OF MIDLAND PARK, MICHELLE F. DUGAN, BOROUGH ADMINISTRATOR, DAVID HEEREMA, CONSTRUCTION OFFICIAL, BUILDING SUB CODE OFFICIAL AND BUILDING INSPECTOR, DEFENDANTS–APPELLANTS,JOHN DOE II THROUGH X (FICTITIOUS PERSONS), DEFENDANTS.

Argued November 26, 2001—Decided March 27, 2002.

2

*Thomas B. Hanrahan* and *Robert T. Regan* argued the cause for appellants (*Hanrahan and Robertelli* and *Mr. Regan,* attorneys).

*Paul A. Massaro* argued the cause for respondent.

The opinion of the Court was delivered by

LaVECCHIA, J.

At issue in this appeal is the meaning of *N.J.S.A.* 52:27D–126(b), a statute governing the conferral of tenure on construction code officials. More particularly, we are called on to determine wheth-

er Anthony Merlino achieved tenure as the Code Official of the Borough of Midland Park when he served a second four-year term after a ten day break in service. We hold that he did not.

## I.

The case arose when Merlino filed a complaint in lieu of prerogative writs against officials of the Borough of Midland Park (collectively the governing body) alleging unlawful termination of his employment as code official and breach of his employment contract. In essence, Merlino claimed that he achieved tenure and was improperly fired.

A trial ensued at which the following facts were established. On May 24, 1990, Merlino was appointed to a four-year term as construction official, building sub-code official, and building inspector by the governing body. His term began on June 4, 1990 and was to expire on June 3, 1994. As the expiration of Merlino's term approached, he appeared at a public meeting of the governing body and indicated his desire to be reappointed. At the meeting, only one member of the governing body voiced specific complaints regarding Merlino's performance. However, a majority of the members were not convinced that Merlino's performance was such that he should receive tenure. Because there was no other candidate for the job, and because an appointment to a second four-year term without tenure would give it the opportunity to recognize improvements or changes in Merlino's performance if they occurred, the governing body proposed a compromise. According to Councilperson Braunius, the governing body discussed the pros and cons of Merlino's performance and decided to give him a second chance by allowing a hiatus before giving him a new appointment without tenure. Councilperson Walker stated that it was "not a matter of choice. [Merlino had] no choice ... it[ ][was] a take it or leave it situation."

After the issue was discussed at the closed meeting, Councilperson Duffy related the plan to Merlino. Specifically, the plan provided that Merlino would resign effective June 3, 1994, the day

his term of office expired and he would be appointed to a new term to commence on June 13, 1994. Councilperson Duffy testified that Merlino understood the plan and appeared to be grateful. Although Merlino equivocated at trial over whether he understood that he would not be appointed to a new term if he did not sign the resignation, he acknowledged that he could have rejected the plan and awaited the results of the vote.

Merlino testified that he consented to the terms of the Council. He admitted that he did not ask Councilperson Duffy for more time to think about the plan or to seek advice from an attorney or other advisor. At about 11:00 p.m., after Councilperson Duffy discussed the plan with Merlino, both joined the meeting in Council Chambers. Approximately ten members of the governing body were present. They explained to Merlino that he lacked support for reappointment and proposed as a solution his resignation and subsequent appointment to a new four-year term after a hiatus. At trial, Merlino acknowledged that he realized that his resignation would cause him not to be afforded tenure. Indeed, we note that because Merlino's initial term had an expiration date, his resignation actually served no discernible purpose other than to eliminate any doubt concerning his lack of "holdover" status. Merlino insisted the governing body vote on the resolution in order to guarantee that he would receive four more years as a code official before he signed the letter of resignation. The governing body enacted Resolution No. 121–94B, dated May 26, 1994, that provides, in pertinent part:

WHEREAS, there will exist a vacancy in the position of Construction Official as of June 13, 1994;

NOW, THEREFORE, BE IT RESOLVED, that Anthony Merlino be and is hereby appointed as Construction Official for a four (4) year term, pursuant to *N.J.S.A.* 52:27D–136 [sic], effective June 13, 1994, which term will expire on June 12, 1998;

After the governing body passed the resolution, Merlino signed the letter of resignation that stated: "I hereby resign my position of Construction Official, effective June 3, 1994."

On June 13, 1994, Merlino began his new term as the Borough's Construction Official and worked for the next four years. Prior to the expiration of that term, Merlino requested that his third appointment be placed on the Council's schedule for discussion. On May 28, 1998, the governing body met to discuss Merlino's reappointment. He was present at the meeting. Various members of the governing body addressed complaints regarding Merlino's performance and after the discussion, the members unanimously determined not to reappoint him. Merlino received written notice of the governing body's determination in a letter dated May 28, 1998. He responded by letter, stating that he had achieved tenure and demanded either reinstatement or a hearing. This lawsuit followed.

At the conclusion of the trial, the trial court ruled in favor of the governing body and dismissed Merlino's complaint in its entirety, with prejudice. The court found that:

The governing body suggested this plan, it gave the plaintiff the primary relief that he wanted, that was reappointment. If his primary relief was tenure then shame on plaintiff for having that hidden agenda. But the governing body's plan was unmistakable in what it would do; it would deprive, it's [sic] intent was to deprive the plaintiff of obtaining tenure at that time. But he received a valuable appointment in exchange therefore, he was given the second chance....

I do not find that Mr. Merlino's will was overborne, that undue or unfair pressure was brought to bear. This was in some respects a settlement of a risk, the risk being that the governing body would vote in the absence of the plan and vote not to reappoint. Plaintiff obtained a certainty; he was aware he was obtaining the certainty, he obtained what he set out to obtain that night, there was no coercion, there was no duress, there was no obligation on the part of the municipality to advise him that if you want more time you may have it, that you may consult with an attorney.

. . . .

... [P]laintiff was not in a materially unfair bargaining position, because although it's true that the governing body makes the decision[,] the plaintiff could have at any time said I do not go along with the plan and let's see where the votes fall. [It may] have turned out the way Mr. Merlino wanted plus, the plus being he would have been reappointed without a break in service and he would have had tenure. But nobody could have known that....

I conclude ... that the plan in the abstract and as implemented was neither intra vires nor ultra vires, that Mr. Merlino therefore did not have tenure in May and June 1998, and the discretionary decision of the governing body not to reappoint him was not arbitrary, capricious[,] or unreasonable, was not violative of either the

State Uniform Construction Code Act, its regulations, state common law, federal common law, federal statutory law[,] or any constitutional provision nor any organic natural law.

Merlino appealed. In a published opinion, *Merlino v. Borough of Midland Park*, 338 *N.J.Super.* 436, 769 *A.*2d 1077 (2001), the Appellate Division affirmed the trial court's dismissal of Merlino's claims for breach of contract and punitive damages, reasoning that no contract of continuing employment had been established and no factual case for punitive damages was offered under state or federal law. *Id.* at 441, 769 *A.*2d 1077. However, the panel reversed the trial court's finding that Merlino did not have tenure. *Ibid.* Relying on *Spiewak v. Rutherford Bd. of Educ.*, 90 *N.J.* 63, 76, 447 *A.*2d 140 (1982), the Appellate Division held that if the Legislature establishes a specific term or condition of employment with no room for discretion, negotiation is fully preempted. *Merlino, supra,* 338 *N.J.Super.* at 439, 769 *A.*2d 1077. Further, the court stated that the parties' contract could not trump the plain terms of *N.J.S.A.* 52:27D–126(b) that confer tenure on a Code official so long as two conditions are met: (1) appointment to a second consecutive term; or (2) commencement of a fifth consecutive year of service. *Id.* at 440, 769 *A.*2d 1077. The Appellate Division found that Merlino's employment history satisfied both statutory requirements. *Id.* at 440–41, 769 *A.*2d 1077. Finally, the Appellate Division characterized the mechanism employed by the governing body as having "the potential of entirely frustrating the manifest legislative design in enacting *N.J.S.A.* 52:27D–126(b)" by forestalling the conferral of tenure indefinitely. *Id.* at 441, 769 *A.*2d 1077. The court remanded the matter for a determination of whether Merlino was entitled to attorney's fees and dismissed, as moot, a challenge to an evidential ruling that barred the testimony of a Department of Community Affairs official. *Ibid.*

The governing body filed a petition for certification limited to two issues: whether Merlino achieved tenure and whether he is entitled to counsel fees. We granted certification. 169 *N.J.* 606, 782 *A.*2d 424 (2001).

## II.

 "The right to tenure is created and governed entirely by statute." *Breitwieser v. State–Operated Sch. Dist.*, 286 *N.J.Super.* 633, 637, 670 *A.*2d 73 (App.Div.1996) (citing *Spiewak, supra,* 90 *N.J.* at 72–73, 447 *A.*2d 140); *see also Lukas v. State, Dept. of Human Services,* 103 *N.J.* 126, 128, 510 *A.*2d 1123 (1986) ("It is well-established that in New Jersey the right to tenure is statutory. A legislative source for tenure rights is essential."). Like other aspects of public employment, statutory terms and conditions of employment take precedence over any side agreement in contravention of the statute. *See, e.g., Golden v. County of Union,* 163 *N.J.* 420, 431, 749 *A.*2d 842 (2000) (holding that statute governing appointment of assistant county prosecutors trumps implied contract between assistant prosecutor and prosecutor) (citing *Walsh v. State,* 290 *N.J.Super.* 1, 15, 674 *A.*2d 988 (1996) (Skillman, J.A.D., dissenting), *rev'd on dissent,* 147 *N.J.* 595, 689 *A.*2d 131 (1997), and *DiPaolo v. Passaic County Bd. of Chosen Freeholders,* 322 *N.J.Super.* 487, 493, 731 *A.*2d 519 (App.Div.1999), *aff'd o.b.,* 162 *N.J.* 572, 745 *A.*2d 540 (2000)). Tenure attaches only on compliance with the precise conditions articulated in the relevant legislative enactment. *Picogna v. Board of Educ.,* 143 *N.J.* 391, 400, 671 *A.*2d 1035 (1996); *Zimmerman v. Board of Educ.,* 38 *N.J.* 65, 72, 183 *A.*2d 25 (1962), *cert. denied,* 371 *U.S.* 956, 83 *S.Ct.* 508, 9 *L. Ed.*2d 502 (1963). Compliance must be absolute and deviations from the statutory methodology can affect entitlement to tenure. *DeStefano v. Washington Tp.,* 220 *N.J.Super.* 273, 278, 531 *A.*2d 1090 (Law Div.1987).

## III.

*N.J.S.A.* 52:27D 126(b) states, in pertinent part:

A construction official or subcode official in a noncivil service municipality shall be appointed for a term of 4 years and shall, upon appointment to a second consecutive term or on or after the commencement of a fifth consecutive year of service, including years of service in an equivalent job title held prior to the adoption of the State Uniform Construction Code, be granted tenure and shall not be removed from office except for just cause after a fair and impartial hearing.

The parties agree that the purport of that statute is at the heart of this case. The governing body argues that Merlino did not serve two consecutive terms within the meaning of *N.J.S.A.* 52:27D–126(b) because of the interruption between his first and second terms; that the actions it took relative to Merlino are not prohibited by the statute; and that if those actions are deemed ultra vires it would discourage creative problem solving by public entities to the detriment of the public good.

Merlino counters that he met both standards for tenure provided in the statute; that once achieved, tenure cannot be waived, forfeited or bargained over; and that the governing body's action requiring a ten-day break in service as a condition of reappointment violates public policy by undermining code enforcement and subjecting code officials to political pressure.

"It is fundamental that 'the meaning of a statute must ... be sought in the language in which the act is framed, and if that is plain ... the sole function of the courts is to enforce it according to its terms.' " *Russell v. Saddle Brook Restaurant Corp.*, 199 *N.J.Super.* 186, 188, 488 *A.*2d 1068 (App.Div.1985) (quoting *Sheeran v. Nationwide Mutual Ins. Co.*, 80 *N.J.* 548, 556, 404 *A.*2d 625 (1979)). If the language of the statute is clear and unambiguous, there is no need to look beyond its terms to determine legislative intent. *State v. Butler*, 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982) (citations omitted).

The first clause of *N.J.S.A.* 52:27D–126(b) is straightforward. It provides that a code official is to be appointed for a four-year term. Likewise, the language of the second clause of the statute—"shall, upon appointment to a second consecutive term ... be granted tenure"—is unequivocal. *N.J.S.A.* 52:27D–126(b). If the governing body chooses to confer tenure on the code official, it does so by reappointing him or her to a "second consecutive" four-year term.

The notion of what is consecutive is well-settled. It means without "an interval or break." *Webster's Third New Internation-*

*al Dictionary* 482 (1993). Indeed, in *Casamasino v. City of Jersey City*, 158 *N.J.* 333, 730 *A.*2d 287 (1999), we specifically noted that to acquire tenure there cannot be "*any break* in service between the initial appointment and the re-appointment," and that "[a]bsent a statutory holdover provision, tax assessors, like justices and judges, who have not been re-appointed and confirmed by the last day of their first full term must vacate the office." *Id.* at 353, 730 *A.*2d 287 (emphasis added). In other words, to acquire tenure in the absence of a statutory holdover provision, there must be a seamless transition from term to term without a gap or interruption. Here there is no holdover provision in the statute. Moreover, to eliminate all doubt in this instance, the Council's resolution declared that a vacancy existed in the position because Merlino's initial four-year term had expired as of June 3, 1994, and, he resigned his position effective June 3rd the last day of his term, an act confirming the existence of a vacancy in position. The second, separate four-year term to which Merlino was appointed, effective June 13, 1994, fails then to satisfy the precise criteria for the acquisition of tenure under this clause because it was not "consecutive" to his former four-year term.

The meaning of the next clause of the statute is less evident:
A construction official ... shall be appointed for a term of 4 years and shall ... on or after the commencement of a fifth consecutive year of service, including years of service in an equivalent job title held prior to the adoption of the State Uniform Construction Code, be granted tenure....
[(emphasis added).]

█ In *Cutler v. Borough of Westwood*, 295 *N.J.Super.* 344, 349–50, 685 *A.*2d 44 (1996), *certif. denied*, 149 *N.J.* 143, 693 *A.*2d 112 (1997), the Appellate Division parsed that language, identifying an ambiguity in the term "on or after". On an examination of the legislative history of the statute, the court found that the Legislature was concerned about the need to "grandfather" officials who performed equivalent jobs prior to the enactment of the UCCA. *Id.* at 351, 685 *A.*2d 44. Thus, the court interpreted "on or after the commencement of a fifth consecutive year of service," as applying "if and only if it includes years of service in an

equivalent job title." *Id.* at 348–50, 685 *A.*2d 44. In other words, the "fifth consecutive year" language is not a holdover route to tenure, but rather a limited grandfather clause allowing prior service to be factored into the tenure calculation on appointment under the UCCA. We agree with the *Cutler* analysis and conclude that, on appointment by the governing body, that clause merely preserves the longevity rights of individuals who were serving in an equivalent job title at the time of enactment of the UCCA. It has no applicability in this case. The only road to tenure for Merlino was an appointment to a second consecutive term.

By dating Merlino's reappointment to take effect ten days after the end of his first term, the parties mutually agreed to a break in service preventing acquisition of tenure upon that appointment. Merlino now challenges the legitimacy and effectiveness of that action. First, he claims that he actually achieved tenure under *Spiewak.* We disagree. In *Spiewak,* the Board of Education negotiated contracts with special education teachers that denied them tenure although they had fully satisfied the statutory standard for tenure under *N.J.S.A.* 18A:28–5, which provides:

> The services of all teaching staff members ... *shall be under tenure* ... after employment in such district or by such board for: (a) [t]hree consecutive calendar years, or any shorter period which may be fixed by the employing board for such purpose; or (b) [t]hree consecutive academic years, together with employment at the beginning of the next succeeding academic year; or (c) [t]he equivalent of more than three academic years within a period of any four consecutive academic years.
> [(emphasis added).]

We held that *N.J.S.A.* 18A:28–5 conferred tenure on those teaching staff members as of right because the statute made tenure after three years of service a mandatory term and condition of employment. Thus, teaching staff members, who fully satisfied the factual prerequisites of the statute, achieved tenure regardless of any side agreements that they may have made renouncing their statutory rights. For "[i]f the Legislature establishes a specific term or condition of employment that leaves no room for discretionary action, then negotiation on the term is fully preempted." *Spiewak, supra,* 90 *N.J.* at 76, 447 *A.*2d 140 (citing *In re IFPTE*

*Local 195 v. State,* 88 *N.J.* 393, 403, 443 *A.*2d 187 (1982)). This case is wholly unlike *Spiewak.*

Here, the factual prerequisites for tenure were not satisfied because Merlino was not appointed to a second consecutive term. His first term expired, and he was out of office for ten days creating a vacancy. Thus, a break between terms occurred and he did not satisfy the tenure requirements. To be sure, if Merlino merely had been reappointed to a second consecutive term, i.e., one beginning when the first ended, this would be a *Spiewak* case and any effort to avert tenure would have failed. It is the hiatus that makes the difference.

■ Alternatively, Merlino argues that the governing body lacked the power to negotiate the break in service with him because a statute governing the terms and conditions of employment, including acquisition of tenure, trumps any side agreement that controverts it. See *Golden, supra,* 163 *N.J.* at 431, 749 *A.*2d 842; *Walsh, supra,* 147 *N.J.* at 595, 689 *A.*2d 131 (1997). The problem with that argument is that there is nothing about a "negotiated" break-in-service that is facially contrary to *N.J.S.A.* 52:27D–126(b). In *Golden* and *Walsh,* the legislative terms and conditions of employment (i.e., at—will service) were sought to be abrogated by implied employment contracts. It was the clash with the statute that required that those contracts be vitiated. Here, there is nothing in the statute to suggest that a break in service, negotiated or otherwise, would contravene it. Indeed, the decision to reappoint or to create a vacancy in office is vested entirely in the Council. It did not require negotiation with Merlino to bring about a vacancy in office. The vacancy would have existed the moment his term expired on June 3, 1994 and he was not reappointed.

■ Merlino's remaining argument is that the action of the governing body creating a hiatus between his terms violates public policy by undermining code enforcement, subjecting code officials to political pressure, and setting the stage for wholesale avoidance of tenure by governing bodies. We disagree.

In our view, Merlino's break in service was not violative of any public policy of the state and was effective to avert the conferral of tenure. We see no undermining of the purposes underlying the Uniform Construction Code Act of which *N.J.S.A.* 52:27D–126(b) is a part. The UCCA guarantees the appointment of licensed professional municipal building code officials and ensures that their tenure in office is not influenced by local politics. *Voges v. Borough of Tinton Falls,* 268 *N.J.Super.* 279, 286–87, 633 *A.*2d 566 (App.Div.1993), (citing *DeStefano, supra,* 220 *N.J.Super.* at 277, 531 *A.*2d 1090), *certif. denied,* 135 *N.J.* 466, 640 *A.*2d 848 (1994). For that reason, achievement of tenure under the UCCA creates a right not to be removed from office other than for just cause after a fair and impartial hearing. *N.J.S.A.* 52:27D–126(b); *DeStefano, supra,* 220 *N.J.Super.* at 279, 531 *A.*2d 1090. However, *N.J.S.A.* 52:27D–126(b) does not confer job protection on all code officials. Otherwise, tenure would attach upon initial appointment. Until the official is appointed to a second consecutive four-year term, no employment guarantees exist. Thus, in resolving whether Merlino achieved tenure, there is nothing in the goals underlying the UCCA that points to an outcome contrary to the intent of the parties to allow a hiatus between terms, averting the acquisition of tenure by Merlino in 1994.

What occurred here was that rather than selecting solely between the Hobson's choice of granting Merlino tenure or letting him go, the governing body decided to allow Merlino another opportunity to demonstrate he was deserving of tenure. That choice helped Merlino because he received a second four-year period of public service, with a chance at future tenure. Arguably, the decision also served Midland Park's interests, not only because there does not appear to have been another candidate in the wings, but because of the potential for Merlino to correct his deficiencies, and allow Midland Park to avoid the learning curve of a new employee.

By mutual consent, the parties agreed to a separate, second four-year term of office for Merlino, thereby effecting his appoint-

ment as Construction Official without acquisition of tenure. There is nothing within the four corners of the statute to preclude that action. As the Appellate Division noted in a different context:

In any case involving application of a statute, we must construe the plain meaning of the statute and apply it to the facts. The meaning of a statute first must be sought in the language in which it is framed and, if it is plain, our sole function is to enforce it according to its terms.

[*Dempsey v. Mastropasqua*, 242 *N.J.Super.* 234, 238, 576 *A*.2d 335 (1990) (internal citations omitted).]

Our decision respects the plain language of the statute, and implements it. To be sure, as a general matter, there should be no need for a break in service designed to provide an additional four years to gain tenure. In the large majority of cases, a governing body will know well within the first four-year term whether the code official should receive tenure. It will be the unusual situation in which a decision is deferred. Further, we do not view this ruling as creating an incentive for a governing body to circumvent tenure. Certainly the record here does not even suggest actions tantamount to "effectively abolishing tenure." *Post* at 16, 796 A.2d at 212. Moreover, we consider it unlikely that a governing body would choose a route that could result in future litigation.

Finally, we disagree with the dissent's view on the impact of *N.J.A.C.* 5:23–4.4(a). A regulation that allows a form of service, to wit an "acting appointment," that does not count toward acquisition of tenure, in our view recognizes the governing body's need for flexibility and supports our conclusion.

IV.

Our ruling that Merlino did not achieve tenure makes it unnecessary for us to address the counsel fee issue. For the reasons stated, we reverse the judgment of the Appellate Division.

Chief Justice PORITZ and Justices COLEMAN, and VERNIERO join in Justice LaVECCHIA's opinion.

Justice LONG filed a separate dissenting opinion in which Justices STEIN and ZAZZALI join.

LONG, J., dissenting.

I agree with my colleagues that Merlino's sole route to tenure was an appointment to a second consecutive term. I also agree that *Cutler v. Borough of Westwood,* 295 *N.J.Super.* 344, 685 *A.*2d 44 (App.Div.1996), *certif. denied,* 149 *N.J.* 143, 693 *A.*2d 112 (1997), correctly interpreted the "fifth consecutive year" language of the statute as a limited grandfather clause with no relevance in these circumstances. Where I part company from the majority is in connection with the meaning of the word "consecutive." I recognize that the common import of the word is "without an interval or break." However, that notion is more complex than the majority believes. What constitutes an interval or break that would make two members of a series non-consecutive depends on the purpose underlying the requirement. Thus, for example, a law might bar a public official from serving two consecutive terms. In those circumstances, and in light of the purposes underlying term limits, no reasonable person would suggest that a ten-day break in service would render a second term served by the same individual non-consecutive.

That is the kind of analysis that is absent from the majority opinion in this case, which holds essentially that any hiatus meets the "break or interval" standard and renders two terms of office non-consecutive for tenure purposes regardless of the break's length or purpose. In my view, that is a gross oversimplification of what is the proper analysis: whether in enacting the tenure provisions of the UCCA, the legislature intended a scheme like that crafted by the governing body to pass muster. To answer that question, the UCCA requires scrutiny. The purpose underlying that statute is the creation of a cadre of highly professional construction code officials not subject to political influence in the performance of their mandated duties under applicable federal, state, county, and municipal statutes, codes, regulations, and ordinances. *DeStefano v. Washington Tp.,* 220 *N.J.Super.* 273, 278, 531 *A.*2d 1090 (Law Div.1987). That goal is directly related both to the initial four-year term and the tenure provision. The four-

year term insulates a code official from political pressure for a temporal period and allows the governing body that period to assess the official's performance. The grant of tenure insulates a code official from any future political pressure and provides continuity and experience in code enforcement.

To be sure, the governing body is free to deny reappointment to an unsatisfactory employee. Such action advances the goals of professionalism by removing inadequate code officials. However, once an employee is found to have acquitted himself well enough to be reappointed to a second consecutive term, legislative tenure advances the goals of the UCCA by providing job security, thus ensuring that high quality, experienced persons will remain as code officials. That is why *N.J.S.A.* 27D–126(b) is cast in mandatory and not permissive terms: "A construction official ... *shall,* upon appointment to a second consecutive term ... be granted tenure." (Emphasis added). Clearly, the Legislature did not intend that a governing body could evade statutory tenure simply by imposing a gap of a few days between regular four-year terms. Such a reading of the "consecutive" language of the act would completely undermine the Legislature's intent to insulate construction officials from the winds of political change. Moreover, it would effectively permit the indefinite employment of a code official without the protection of tenure ever attaching. There is nothing in the majority's opinion to prevent a governing body from placing minuscule "gaps" between all its reappointments, thereby effectively abolishing tenure. Given the majority's bright-line rule that such gaps are permissible and prevent tenure from attaching, its prediction that its holding will create no incentive to circumvent tenure because a governing body would not "choose a route that could result in litigation" rings hollow. After this opinion, there is nothing left to litigate.

In my view, Merlino met the statutory standard for tenure. Hence, *Spiewak v. Rutherford Board of Education,* 90 *N.J.* 63, 76, 447 *A.*2d 140 (1982), with its holding that side agreements cannot vitiate statutory tenure terms, is applicable. Further, I note that

nothing in such a ruling would violate *Casamasino v. City of Jersey City*, 158 *N.J.* 333, 730 *A.*2d 287 (1998). That case held that an employee who has not been reappointed and confirmed by the last day of his first term must vacate the office. *Id.* at 353, 730 *A.*2d 287. Merlino, indeed, was reappointed prior to the last day of his first full term, which ended on June 3, 1994. The fact that his reappointment was to be effective ten days later was of no consequence to tenure.

In addition, with respect to the majority's public policy argument, a mechanism already exists that provides governing bodies with the flexibility necessary to address the concerns raised in the opinion. *N.J.A.C.* 5:23–4.4(a)(6) [1] provides a procedure for a temporary appointment of a code official that may be extended or renewed with the approval of the Department of Community Affairs. Such a temporary appointment, after the expiration of an official's first four-year term, would neither grant him tenure nor constitute a gap or interruption that would obviate tenure if he was thereafter appointed to a second consecutive term. That methodology is available to deal with the employee who improves or deteriorates near the end of his first term and requires a further period of observation. That scheme has the advantage of providing for oversight by the Department of Community Affairs, the agency charged with the ultimate responsibility for code enforcement. There is simply no provision in our law for deliberately imposing gaps or interruptions between full four-year terms

---

[1] *N.J.A.C.* 5:23–4.4(a)(6) states:

Acting appointments: A municipality shall appoint an acting construction official or subcode official any time the absence of such official would impede orderly administration of the Uniform Construction Code and other duties mandated by the municipality. Acting appointments shall be accomplished by any mechanism acceptable to the municipality; providing, however, that a written record shall be kept. Notice to the Department shall be provided within seven days any time an appointment is made for more than 30 days. Acting appointments may not be made for longer than 60 days, nor may they be extended or renewed beyond 60 days unless specific authority to do so is granted in writing by the Department.

18 .

for the purpose of avoiding tenure. As Judge Kestin, writing for the Appellate Division, correctly stated:

> The mechanism that was employed has the potential of entirely frustrating the manifest législative design in enacting *N.J.S.A.* 52:27D–126(b). If the statutory tenure grant could be so easily evaded, any municipality could forestall the conferral of tenure indefinitely simply by employing the same mechanism every four years. Without denigrating the trial court's finding that no duress occurred here, we observe simply that any official faced with the choice given to plaintiff at the end of his first term would be hard pressed to refuse the offer and opt for the relinquishment of office over the guarantee of continued employment for an ensuing four-year term.
>
> If, by the unfettered judgment of those making the decision, plaintiff had not earned reappointment to his second term, it was incumbent upon the decision-makers so to declare. There were no impediments to the denial of a second term. By choosing, instead, to grant plaintiff a second term, even in a good faith effort to defer the tenure issue, the mayor and council came squarely within the terms of the statute and, by operation of law, conferred tenure upon the plaintiff. Any subsequent effort to remove him needed to conform with statutory requirements: "for just cause after a fair and impartial hearing."
>
> [*Merlino v. Borough of Midland Park*, 338 *N.J.Super.* 436, 441, 769 *A.*2d 1077 (App.Div.2001) (citations omitted).]

For those reasons, I dissent.

Justices STEIN and ZAZZALI join in this dissent.

*For reversal*—Chief Justice PORITZ and Justices COLEMAN, VERNIERO AND LaVECCHIA—4.

*For affirmance*—Justices STEIN, LONG and ZAZZALI—3.